534 So.2d 469 (1988)
MARTIN LUMBER PARTNERSHIP, Plaintiff-Appellee,
v.
LOUISIANA INSURANCE GUARANTY ASSOCIATION, et al., Defendants-Appellants.
No. 87-857.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1988.
Writ Denied February 17, 1989.
*471 Gold, Weems, Bruser, Sharp, Sues & Rundell, Amanda Palmer, Alexandria, for plaintiff-appellee.
Mathews, Atkinson, Guglielmo, Marks & Day, Judith R. Atkinson, Baton Rouge, for defendant-appellant.
Stafford, Stewart & Potter, Larry A. Stewart, Alexandria, La., Brittain & Williams, Joe P. Williams, Natchitoches, for defendant-appellee.
Before FORET, DOUCET and YELVERTON, JJ.
FORET, Judge.
This case arises on cross motions for summary judgment wherein appellant, Louisiana Insurance Guaranty Association (LIGA) appeals from the denial of its motion for summary judgment and from the grant of summary judgment in favor of appellee, Martin Lumber Partnership (Martin).
Plaintiff, Martin, filed suit against LIGA and defendant, Turrentine Insurance Agency, Inc., based upon LIGA's liability to policyholders for claims against insolvent insurers licensed to do business in Louisiana. By amended petition, Worldsurance, Inc. was later added as a defendant.[1]
The basis of Martin's claim is that LIGA is liable to Martin for payments due under an endorsement by Early American Insurance Company, an insolvent insurer licensed to do business in Louisiana. The endorsement at issue was attached to a worker's compensation policy issued to Martin Lumber Partnership by Western Preferred Casualty Company (Western), a now insolvent insurer, not authorized to do business in Louisiana.
Cross-motions for summary judgment were filed by Martin and LIGA. The trial court, pursuant to written reasons, granted summary judgment in favor of Martin and against LIGA. LIGA appeals. We affirm the trial court's grant of summary judgment in favor of Martin as to the liability of LIGA and reverse and remand the trial court's grant of summary judgment as to statutory attorney fees, penalties, and interest.

FACTS
The relevant undisputed facts are as follows:
Martin Lumber obtained a worker's compensation insurance policy from Western on or about October 13, 1980. At the time that Western issued the policy to Martin, Western was a surplus lines company, not authorized to conduct insurance transactions in Louisiana and not protected by LIGA in the event of Western's insolvency. On October 13, 1980, Martin's worker's compensation insurance policy issued by Western was endorsed by Early American Insurance Company (Early American) with endorsement #9, which stated as follows:
*472 Early American was authorized to do business in Louisiana and was protected by LIGA in the event of its insolvency.
Coverage under this policy extended from October 13, 1980 to October 13, 1981. While in effect, John Nugent, an employee of Martin, suffered an injury covered by the policy.
Western, initially individually and later through Early American[2], paid medical expenses and compensation benefits in connection with Nugent's injury from the time of the injury until the end of 1984 or early 1985. At the end of 1984 or early 1985, Western and Early American ceased making worker's compensation benefit payments to Nugent, and Martin began paying Nugent's benefits. Both Early American and Western were ultimately declared insolvent.

ISSUES
The determinative issue of LIGA's appeal is whether the trial court was correct in finding that there were no genuine issues of material fact presented and, therefore, Martin was entitled to summary judgment as a matter of law.
Summarizing LIGA's specifications of error, LIGA primarily contends that the trial court erred in finding that the endorsement issued by Early American was "direct insurance" and therefore, covered by the Louisiana Insurance Guaranty Association Statute. Instead, LIGA urges that Early American's endorsement in Martin's worker's *473 compensation policy was a form of reinsurance. LIGA further urges that policies of reinsurance are not direct insurance and, as such, are not covered by LIGA.
LIGA contends that there are numerous other factual and legal issues which prevent the proper grant of summary judgment in favor of Martin. These will be discussed separately.
Finally, LIGA contends that the trial court erred in awarding Martin statutory penalties, attorney fees, and interest.

ISSUES OF FACT
Appellant, LIGA, contends that the trial court erred in finding that no genuine issues of material fact exists insofar as Martin's motion for summary judgment.
Pursuant to La.C.C.P. art. 966, a motion for summary judgment is properly granted only if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to material fact, and that the mover is entitled to judgment as a matter of law.
LIGA contends that there are several issues of material fact which would prevent the proper grant of summary judgment. We find that LIGA's contentions are unsupported. Notably, LIGA contends that there is a genuine issue as to the correct name of the named insured and the right of Martin Lumber Partnership to proceed in this lawsuit. LIGA also contends that Martin has not proven that there was a policy in full force and effect at the time Nugent was injured.
As to both of these contentions, we note that LIGA failed to proceed on a peremptory exception of no right of action at any time in the trial court; that Martin's affidavits in support of its motion for summary judgment speak to these issues and are unrefuted by opposing affidavits filed by LIGA; and that both Western and Early American paid benefits on this claim for several years prior to their insolvency. As such, we do not find that these are genuine issues of material fact which would discourage the proper grant of summary judgment.
Additionally, LIGA contends that Martin's knowledge or lack of knowledge of the fact that Western was a surplus lines carrier is material. Insofar as Martin's claim does not involve an obligation of Western, but instead, an obligation of LIGA pursuant to Early American's endorsement, we find this contention of no merit.
Finally, LIGA argues that it is entitled to a $35,000 credit on the policy obligations at issue. Extinguishment of an obligation is an affirmative defense, which must be pled. See, La.C.C.P. art. 1005. This defense has not been pled by LIGA and, as such, is not properly before this Court. See, Lofton v. Louisiana Pacific Corp., 410 So.2d 1171 (La.App. 3 Cir.1982), writ denied, 412 So.2d 1094 (La.1982).

ISSUES OF LAW
Having determined that the trial court was correct in finding no genuine issues of material fact, we now turn to the issue of whether or not Martin is entitled to summary judgment as a matter of law.
LIGA contends that the trial court erred in finding LIGA liable to Martin for Martin's claims under Early American's "cut-through" endorsement which was attached to Martin's worker's compensation insurance policy. The basis of this contention is that Early American's "cut-through" endorsement constituted reinsurance; that reinsurance is not direct insurance under La.R.S. 22:1377 and that therefore, LIGA has no responsibility for Martin's claims made in connection with Early American's endorsement.
Further, LIGA contends that Western is a surplus lines/non-admitted carrier and LIGA is not responsible for claims arising under policies issued by surplus lines/non-admitted carriers. The basis for this contention is found in La.R.S. 22:1258 which states as follows:
"§ 1258. Endorsement of contract
Every insurance contract procured and delivered as a surplus line coverage pursuant *474 to this part shall have stamped upon it and be countersigned by the surplus line broker who procured it, the following:

NOTICE
This insurance policy is delivered as a surplus line coverage under the insurance code of the State of Louisiana.
This contract of insurance is not issued by a company authorized to do business in Louisiana. In the event of insolvency of the company issuing this contract, the policyholder or claimant is not covered by the Louisiana Insurance Guaranty Association which guarantees only specific policies issued by an insurance company authorized to do business in Louisiana."
We agree with LIGA's contentions that LIGA is not responsible for claims of a policyholder on a policy issued solely by a surplus lines/non-admitted carrier. We are not faced with that factual scenario in this case. The endorsement in Martin's worker's compensation policy was issued by Early American at the same time as the contract of insurance was issued by Western. It was attached to Western's policy and became part of the same policy. The policy and the endorsement must be construed together. See, Ledoux v. Old Republic Life Insurance Co., 233 So.2d 731 (La.App. 3 Cir.1970). Essentially, we are dealing with one policy of insurance issued jointly by two insurance companies. Therefore, although this policy was issued by an insurance company not protected by LIGA, i.e., Western, this policy was also issued by Early American, an insurance company undisputedly authorized to do business in the State of Louisiana and protected by LIGA in the event of insolvency. In essence, considering the attachments and endorsements to a contract of insurance together, the policy at issue was issued by Early American and is covered by the protection of LIGA.
Next, LIGA contends that, pursuant to La.R.S. 22:1377 and R.S. 22:1379, LIGA does not cover claims under any type of reinsurance contract. R.S. 22:1377 states:
"§ 1377. Scope
This Part shall apply to all kinds of direct insurance, except life, health and accident, title, disability, mortgage guaranty, and ocean marine insurance."
R.S. 22:1379 states, in pertinent part:
"(3) `Covered claim' shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise."
This argument implies that reinsurance, of all types, is contrasted with direct insurance, for purposes of LIGA coverage. We do not find this argument convincing in light of the language of the statute. La.R. S. 22:1379 clearly states that a "`[c]overed claim' shall not include any amount due any reinsurer,...." (emphasis added). Here, we are not dealing with an amount due any reinsurer, insurer, insurance pool, or underwriting association, as subrogation recoveries or otherwise. This action entails a claim by an employer, the insured, for worker's compensation benefits due its employee. Therefore, the issue before this Court is not whether the claim is a claim under a reinsurance policy, but instead, whether the claim is due to a reinsurer or insurer, etc. We find that the claim is not due to an insurer or reinsurer and therefore, the exceptions to a "covered claim" set forth in La.R.S. 22:1379(3) are not applicable.
Second, we must determine whether the endorsement issued by Early American is direct insurance within the scope of La. R.S. 22:1377. Unfortunately, the Legislature did not define "direct insurance." Therefore, to determine whether LIGA is liable for Early American's obligation on its endorsement, we must interpret what the legislature intended as "direct insurance." LIGA contends that we should look to the LIGA statutory definition of "net direct written premiums" as an aid in defining "direct insurance." "Net direct written premiums" under La.R.S. 22:1379(6) are those premiums, after certain adjustments, written in this State on insurance policies, other than premiums on contracts between insurers or reinsurers.
*475 By analogy, "direct insurance" under La. R.S. 22:1377 would apply to contracts of insurance wherein proceeds are paid directly to the insured under the policy, other than proceeds due any insurer or reinsurer. See, La.R.S. 22:1379(3).
Under this analogy, the insurance issued by Early American to Martin through the "cut-through" endorsement constitutes direct insurance. The insured, Martin, is the claimant under the policy[3]; the liability of Early American arises upon written notice and demand for payment from the insured in the event that Western "fails to pay any loss which is payable under this policy." Pursuant to policy terms, after liability arises, Early American agrees "to pay promptly when due all compensation and other benefits required of the insured by the workmen's compensation law." Early American clearly bound itself as Martin's insurer and, in fact, paid on Martin's claim until it became insolvent.
Affidavits of Tom Ellis and H.P. Walker were submitted on behalf of LIGA in support of its motion for summary judgment and in opposition to the motion for summary judgment filed on behalf of Martin. The affidavit of Ellis raised no genuine issue of material fact insofar as it merely stated that Early American carried and/or handled this policy "as a type or form of reinsurance, not as direct insurance." Likewise, the affidavit of Walker merely expresses a legal conclusion that LIGA is not responsible for the obligations of Early American arising from the endorsement at issue because it does not constitute direct insurance.
There is no dispute as to the fact that the Early American endorsement obligated Early American directly to Martin in the event that Western failed to pay. The issue as to whether this direct obligation constitutes direct insurance for purposes of LIGA's coverage is a question of statutory interpretation within the province of the court. As such, we agree with the trial court that the intent of Early American and the opinion of others in the insurance industry as to the effect of the cut-through endorsement is irrelevant. We determine, as a matter of law, that the Early American endorsement constitutes direct insurance obligating Early American to Martin for purposes of LIGA's coverage.
Our Brethren in the Fourth Circuit were faced with facts involving the identical endorsement by Early American in Wilkerson v. Jimco, Inc., 499 So.2d 1245 (La.App. 4 Cir.1986). The Fourth Circuit, in affirming the trial court, stated at page 1247:
"Early American Insurance Co. was a company authorized to do business in the state of Louisiana. The purpose of LIGA is generally to pay legitimate claims where the insurance company is insolvent. LIGA is created at R.S. 22:1376, et seq. Section 1376 states the purpose of LIGA as:
`The purpose of this Part is to provide a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policy holders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers.'
Section 1382 provides:
`(1) The association shall:
(b) Be deemed the insurer to the extent of its obligation on the covered claims and to such extent shall have all rights, duties and obligations of the insolvent insurer as if the insurer had not become insolvent.'"
We find, as did the Wilkerson Court, that LIGA is obligated for claims made under the Early American endorsement at issue.
*476 Finally, LIGA contends that the trial court erred in failing to consider the fact that Early American was declared insolvent prior to Western. We do not find this fact material in light of the language of the endorsement upon which Early American's obligation arose to Martin. Early American was solvent at the time of the endorsement and at the time of the injury to claimant's employee. When Early American was declared insolvent early in 1985, LIGA was deemed to be the insurer to the extent of Early American's obligation on the covered claim and retained all the rights, duties and obligations of Early American as if Early American had not become insolvent.
The fact that Western was not declared insolvent until April of 1986 is immaterial. Early American's liability arose due to the failure of Western to pay a loss which was payable under the policy. Early American's liability was not dependent upon Western's being declared insolvent. LIGA's liability for the obligations of Early American arose in early 1985 when Early American became insolvent.
La.R.S. 22:1378 states as follows regarding the construction of the LIGA statute:
"§ 1378. Construction
This Part shall be liberally construed to effect the purpose under section R.S. 22:1376, which shall constitute an aid and guide to interpretation."
See also, Nasello v. Transit Casualty Co. 530 So.2d 1114 (La.1988). Insofar as the purpose of LIGA is to pay legitimate claims where the insurance company is insolvent, we find that LIGA is deemed to be the insurer to the extent of Early American's obligation and affirm the grant of summary judgment in favor of Martin.

AMOUNTS AWARDED
LIGA contends that the trial court erred in ordering that it pay reimbursement of worker's compensation payments of $18,266 to Martin Lumber Partnership. Martin's affidavit fully supports the award of this amount for reimbursement of payments made by Martin to its employee, and LIGA has offered no opposing affidavits or other support in opposition. LIGA also assigns as error the judgment in favor of Martin ordering LIGA to pay $163 weekly worker's compensation benefits to Martin until such time as LIGA shall commence payment to John Nugent. Again, the record supports these awards and LIGA has neither argued nor offered proper opposition, by affidavit or otherwise, as to these awards. Therefore, this portion of the trial court judgment is affirmed.

APPEAL FROM DENIAL OF SUMMARY JUDGMENT
LIGA contends that the trial court erred in denying its motion for summary judgment on the issue of statutory coverage. No appeal lies from the denial of a motion for summary judgment insofar as it does not constitute a final judgment. No writs were filed by LIGA as to this contention. Nevertheless, in reviewing the trial court's grant of summary judgment in favor of Martin, we have reviewed the issue of statutory coverage and find that the trial court properly denied LIGA's motion for summary judgment.

STATUTORY PENALTIES, ATTORNEY'S FEES AND INTEREST
LIGA contends that the trial court erred in awarding judgment in favor of Martin and against LIGA "for interest at twelve (12%) per cent per annum from the date of each payment of worker compensation by Martin Lumber Partnership to John Nugent, together with expenses of the suit, attorney's fees in the amount of $7,500, for fees as of April 28, 1987, and statutory penalties of twelve (12%) per cent of each installment not timely paid."
In an action for worker's compensation payments, attorney's fees may be awarded upon a finding of arbitrary, capricious failure to pay. La.R.S. 23:1201.2 states, in pertinent part:
"§ 1201.2. Failure to pay claims; discontinuance; attorney's fees
. . . .
shall pay the amount of any claim due under this Chapter within sixty days after *477 receipt of written notice. Failure to make such payment within sixty days after receipt of notice, when such failure is found to be arbitrary, capricious, or without probable cause, shall subject employer or insurer, in addition to the amount of the claim due, to payment of all reasonable attorney's fees for the prosecution and collection of such claim,....
Any employer or insurer who at any time discontinues payment of claims due and arising under this Chapter, when such discontinuance is found to be arbitrary, capricious, or without probable cause, shall be subject to the payment of all reasonable attorney's fees for the prosecution and collection of such claims. The provisions of R.S. 23:1141 limiting the amount of attorney's fees shall not apply to cases where the employer or insurer is found liable for attorney's fees under this Section. The provisions of R.S. 22:658 shall not be applicable to claims arising under this Chapter."
As we held in Williams v. Western Preferred Cas. Ins. Co., 465 So.2d 191 (La. App. 3 Cir.1985), the issue as to whether a refusal to pay worker's compensation benefits is arbitrary, capricious, and without probable cause, is a question of fact. See also, Williams v. Union Tank Car Co., 524 So.2d 858 (La.App. 3 Cir.1988). Martin has not carried the burden of showing that LIGA was arbitrary and capricious in failing to make worker's compensation payments. By its very nature, the question as to whether LIGA acted arbitrary and capriciously is a query more properly decided by the trial court.[4]
Likewise, the proper award of statutory penalties, in this case, entails a factual finding that LIGA did not have a reasonable basis to believe that medical expenses and compensation benefits were not due John Nugent and Martin.
We recently discussed the award of penalties in worker's compensation cases in Breaux v. Travelers Ins. Co., 526 So.2d 284 (La.App. 3 Cir.1988), as follows:
"The award of statutory penalties in worker's compensation cases is governed by La.R.S. 23:1201(B, E), which provides in pertinent part as follows:
`B. The first installment of compensation payable for temporary total disability, permanent total disability, or death shall become due on the fourteenth day after the employer has knowledge of the injury or death and resulting loss of income, on which date all such compensation then due shall be paid.
. . . .
`E. If any installment of compensation payable without an order is not paid within the time period provided in Subsections (B), (C), or (D) of this Section, there shall be added to such unpaid installment a penalty of an amount equal to twelve percent thereof, which shall be paid at the same time as, and in addition to, such installment of compensation, unless such nonpayment results from conditions over which the employer or insurer had no control. Whenever the employee's right to such benefits has been reasonably controverted by the employer or his insurer, the penalties set forth in this Subsection shall not apply....' (Emphasis ours).
"In Chelette v. American Guarantee and Liability Insurance, Inc., 480 So. 2d 363 (La.App. 3rd Cir.1985), this court was called upon, for the first time, to determine the meaning of `reasonably controverted'. In Chelette, at *478 pages 366 and 367, this writer, as organ of the court, stated:
`Black's Law Dictionary 298 (5th ed. 1979) defines `controvert' as `to dispute; to deny; to oppose or contest; to take issue on.' Using this definition along with a plain reading of the statute, we conclude that the following test is applicable: given the facts, medical and otherwise, known to the employer or his insurer, did the employer or insurer have a reasonable basis to believe that medical expenses and compensation benefits were not due the employee. Stated another way, did the employer or his insurer have sufficient factual and medical information to reasonably counter the factual and medical information presented by the claimant. This test requires a close analysis of each workers' compensation case.'" Id., at page 291.
Again, the test in determining whether Martin is entitled to statutory penalties involves a subjective determination as to the reasonableness of LIGA's failure to pay benefits and, on the facts before us, is not properly determined by a motion for summary judgment.

CONCLUSION
Based upon the foregoing, the judgment of the trial court is affirmed insofar as the trial court found LIGA liable to Martin for all claims of Martin under the "cut-through endorsement" made by Early American, forming a part of Policy # WWC100030, issued by Western to Martin, and that LIGA fulfill all of its obligations as an insurer of Martin. The judgment of the trial court is reversed and remanded insofar as it grants "interest at 12% per annum from the date of each payment of worker's compensation by Martin Lumber Partnership to John Nugent, together with expenses of this suit, attorney's fees in the amount of $7,500, ..., and statutory penalties of 12% of each installment not timely paid."
The above portion of the trial court's judgment will be recast as follows:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be judgment in favor of Martin Lumber Partnership and against Louisiana Insurance Guaranty Association for legal interest from the date of each payment of worker's compensation by Martin Lumber Partnership to John Nugent, plus all costs of these proceedings.
The remainder of the trial court's judgment is affirmed.
Costs of this appeal are assessed against Louisiana Insurance Guaranty Association.
AFFIRMED IN PART, REVERSED IN PART, AND REMANDED.
NOTES
[1] Defendants, Turrentine and Worldsurance, Inc., are not parties to this appeal.
[2] The Colorado Insurance Department approved a merger between Western Preferred Casualty Company and Early American Insurance Company, effective September 30, 1984. On February 7, 1986, the District Court for the City and County of Denver, Colorado, declared this merger between Western and Early American null and void and without effect because the companies were insolvent at the time the merger was approved. Therefore, the invalid merger of these two companies is not at issue and is of no relevance in this appeal.
[3] Pursuant to La.R.S. 23:1162 A, a worker's compensation policy obligates the insurer directly to the injured person, as follows:

"A. No policy of insurance against liability arising under this Chapter shall be issued unless it contains the agreement of the insurer that it will promptly pay to the person entitled to compensation....
.... This agreement shall be construed to be a direct obligation by the insurer to the person entitled to compensation, enforceable in his name."
[4] Olson v. Ins. Co. of State of Pa., 471 So.2d 1151, 1155, footnote 3 (La.App. 3 Cir.1985), writ denied, 476 So.2d 352 (La.1985):

"3. The 1983 amendments to the workers' compensation statutes have ended the utility of section 658 for compensation cases. As amended, Louisiana Revised Statute 23:1201.2 governs the issue of arbitrary and capricious late- or non-payment for both insurers and uninsured employers. Section 1201.2 prohibits the use of revised statute 22:658 in worker's compensation cases, and section 1201.2 does not provide for penalties, only for attorney fees. See Mallet v. La. Nursing Homes, Inc., 459 So.2d 178, 181 n. 2 (La.App. 3d Cir.1984)."