ADAMS, Justice.
O.B. Pierce filed an action against Johnny Pierce for worker’s compensation benefits. When O.B. Pierce discovered that Johnny Pierce’s worker’s compensation insurance carrier was in receivership, he amended his complaint to add as a party the Alabama Insurance Guaranty Association (“Guaranty Association”), a non-profit unincorporated legal entity created by the Alabama legislature, Ala.Code 1975, § 27-42-1 et seq., and sought a declaration that the Guaranty Association had a duty to indemnify and defend Johnny Pierce in the worker’s compensation action. The trial court entered a judgment declaring that the Guaranty Association had a duty to defend and indemnify Johnny Pierce.
O.B. Pierce was injured during the course of his employment with his son, Johnny Pierce, who operated a pulpwood truck and sold pulpwood to Tennessee River Pulp & Paper Company (“Tennessee River”). Johnny Pierce maintained worker’s compensation insurance through Tennessee River, and the insurance premiums were deducted from his receipts for each load of pulpwood delivered.
Tennessee River’s worker’s compensation insurance was based on an agreement between Western Preferred Casualty Company (“Western”), American Excess Underwriters, Inc., (“American Excess”), and Early American Insurance Company (“Early American”). American Excess issued an insurance policy that named as insured the “vendors of Tennessee River Pulp & Paper Company,” of which Johnny Pierce is a vendor. The insurance policy named Western as the insurer of Tennessee River’s vendors. Additionally, the policy contained this attached endorsement by Early American:
“EARLY AMERICAN INSURANCE COMPANY hereby agrees that in the event the WESTERN PREFERRED CASUALTY COMPANY fails to pay any loss which is payable under this policy, EARLY AMERICAN INSURANCE COMPANY shall become liable for the loss after receiving written notice and demand for payment from the insured. *312 Any payment shall be subject to the terms and conditions of this policy.”
Of the three entities that were to provide insurance to Tennessee River’s vendors under the provisions of the policy, only Early American has ever been licensed to conduct insurance transactions in Alabama. Ala. Code 1975, § 27-3-1 et seq.
After O.B. Pierce filed his action, he received an affidavit that stated that Western had been placed in receivership. American Excess nevertheless retained counsel to defend Johnny Pierce and it paid O.B. Pierce compensation benefits. Both American Excess and Early American were subsequently placed in receivership. After O.B. Pierce added the Guaranty Association as a party, the Guaranty Association learned that Western was not licensed to transact insurance business in Alabama and claimed that it had no responsibility either to make compensation payments to O.B. Pierce or to defend and indemnify Johnny Pierce.
The Guaranty Association is a non-profit organization created by the Alabama Insurance Guaranty Association Act (“the Act”). Ala.Code 1975, § 27-42-1 et seq. The purpose of the Act is to provide a mechanism for payment for covered claims under certain insurance policies, § 27-42-2, and a “covered claim” is defined as follows:
“An unpaid claim, including one of unearned premiums, which arises out of and is within the coverage and not in excess of the applicable limits of an insurance policy to which this chapter applies issued by an insurer, if such insurer becomes an insolvent insurer after January 1, 1981 and (i) the claimant or insured is a resident of this state at the time of the insured event; or (ii) the property from which the claim arises is permanently located in this state. ‘Covered claim’ shall not include any amount due any reinsurer, insurer, insurance pool, or underwriting association, as sub-rogation recoveries or otherwise.”
§ 27-42-5(4). (Emphasis added.) An “insolvent insurer,” as defined by the Act, is:
“An insurer licensed to transact insurance in this state, either at the time the policy was issued or when the insured event occurred, and against whom an order of liquidation with a finding of insolvency has been entered after January 1, 1981....”
§ 27-42-5(5).
The Act applies to all kinds of direct insurance, “except life, annuities, disability, accident and health, title, surety, credit, mortgage guaranty and ocean marine insurance.” § 27-42-3.
Western, which was the named insurer on the policy, has never been licensed to transact insurance business in Alabama. Accordingly, under the Act, the Guaranty Association is not obligated to pay Pierce’s claims against Western, because the Act only provides protection from the insolvency of insurers “licensed to transact insurance in this State.” § 27-42-2; § 27-42-5(4) and (5). American Excess has never been licensed to transact insurance in Alabama either, and, accordingly, the Guaranty Association is not obligated to pay any claim of Pierce’s against American Excess. Id. On the other hand, Early American was licensed to transact insurance business in Alabama at all times relevant to Pierce’s lawsuit, and Early American, by an endorsement attached to the insurance policy, “agree[d] that in the event [Western] fails to pay any loss which is payable under this policy” that “Early American shall be liable for the loss.”
We must determine whether that endorsement made by Early American constitutes “an insurance policy to which [the Act] applies,” § 27-42-5(4), so as to make Pierce’s claim a “covered claim” and, thus, an obligation of the Guaranty Association. Section 27-42-3 states that the Act applies to “all kinds of direct insurance.” Accordingly, the dispositive issue in this case is whether the endorsement made by Early American constitutes “direct insurance” for the purposes of the Act.
Neither the legislature nor this Court has defined “direct insurance” as that term is used in this context. In making our determination of the meaning of “direct insurance,” as that term is used in the Act, we must determine what the legislature intended .the words to mean. Alabama Farm Bureau Mutual Casualty Insurance Co. v. City of Hartselle, 460 So.2d *313 1219, 1223 (Ala.1984). The intention of the legislature must be determined primarily from the language of the statute itself if it is unambiguous, and the words used in the statute must be given their natural, plain, ordinary, and commonly understood meaning. Id. In determining the definition of the term “direct insurance” in the Florida Insurance Guaranty Act, a Florida appeals court, confronted with a situation similar to that presented here, where there was little guidance as to the definition of the term, wrote the following about the plain, ordinary meaning of the word “direct,” as it was used in the Florida act:
“All agree that the legislature intended the act to have no applicability to insurance which was not ‘direct insurance.’ However, nowhere in the Act, or in Florida Statutes generally, is the term ‘direct insurance’ defined. Nor does it appear that ‘direct insurance’ is a term of art in insurance law generally. The simple word ‘direct’ when used as an adjective is readily and commonly understood to mean immediate; without deviation or interruption; by the shortest route; without circuity; without any intervening medium, agency or influence....”
Zinke-Smith, Inc. v. Florida Insurance Guaranty Association, 304 So.2d 507, 509 (Fla.Dist.Ct.App.1974). Considering those commonly understood meanings of the word direct as described by the Florida appeals court, we hold that “direct insurance” as used in the Act refers to an insurance contract between an insured and an insurer that has accepted a designated risk of a designated loss to the insured. In the present case, Early American, which was licensed to transact insurance business in Alabama, agreed that, if Western failed to pay any loss payable under the policy, then Early American would be liable to pay for such a loss. Early American, thus, by virtue of an insurance contract, accepted the designated risk that if Western failed to pay Pierce, then Early American would pay Pierce the amount due under that policy (that amount would be the designated loss, of course). Accordingly, the endorsement Early American made as a licensed insurer in Alabama constitutes “direct insurance” within the meaning of the Alabama Insurance Guaranty Association Act, and the Guaranty Association is bound to provide coverage under the provisions of the Act.
The result we have reached is supported by the holding of the Louisiana Court of Appeals in Martin Lumber Partnership v. Louisiana Insurance Guaranty Association, 534 So.2d 469 (La.App.1988), a case whose facts are virtually identical to those of this case. In that case, Martin Lumber obtained a worker’s compensation insurance policy from Western, one of the insurance companies involved in our case. Western was not authorized to conduct insurance transactions in Louisiana; therefore, Western was not covered by the Louisiana Insurance Guaranty Act. Early American, also a company involved in our own case, issued to Martin Lumber an endorsement identical to the endorsement in this case. Early American was authorized to conduct insurance transactions in Louisiana. When Western and Early American became insolvent, Martin Lumber filed an action requesting payment of worker’s compensation benefits from the Louisiana Insurance Guaranty Association, alleging that the Guaranty Association was liable to pay the benefits due under Early American’s endorsement, because, it argued, Early American was an insurer covered under the Louisiana Insurance Guaranty Act. The appeals court affirmed a summary judgment granting the relief Martin Lumber had requested, holding that the endorsement by Early American constituted a direct insurance policy that was covered by the Louisiana Insurance Guaranty Act. Id. at 474-75. Thus, confronted with the same fact situation and the same dispositive issue in its case, the Louisiana court reached the same result that we reach.today.
The judgment is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, ALMON, SHORES, HOUSTON, STEAGALL and KENNEDY, JJ., concur.