KENNEDY, Justice.
SouthTrust Bank of Alabama (hereinafter “SouthTrust”), filed an action against the Alabama Life and Disability Insurance Guaranty Association (hereinafter “ALDI-GA”), seeking indemnification from ALDI-GA for the failure of an insurance company to pay the proceeds of insurance policies on five separate trusts. The trial court entered a summary judgment for ALDIGA. We affirm.
In 1962, George L. Jones was employed jointly as the executive director of the Alabama Tire Dealers and Retreaders Association and the Georgia Tire Dealers and Re- *1303 treaders Association. In 1967, Jones was given the responsibility for obtaining group health insurance for the employees and the association members. He first purchased group insurance from Peninsula Life Insurance Company. A few years later he contracted for group insurance with National Savings Life of Murfreesboro, Tennessee (“National Savings”). Group insurance was then being issued through a separate corporation named MISSALAGA, which arranged for group insurance for employees of tire dealers in three states, Mississippi, Alabama, and Georgia. At some point, the name of MISSALAGA was changed to the Associated Tire Dealers Health Group Benefit Trust. Jones formed a service company, incorporated on January 1, 1970, called Association Management Services, Inc. (“AMS”). In 1977, the tire dealers associations of Alabama, Mississippi, and Georgia established a self-funded trust under the Employee Retirement Income Security Act of 1974 (“ERISA”). The ERISA trust was the recipient of and held the funds paid by the members of the tire dealers associations for their employees. Jones was the trustee of the trust and AMS was the plan administrator. SouthTrust was later designated as the trustee of this fund, replacing Jones.
In 1979, a second ERISA trust, the AAH Trust, was established. Again, Jones was trustee and AMS acted as administrator. SouthTrust later became trustee of the AAH Trust, when Jones resigned. The other three trusts involved in this litigation, the C/B Trust, the Pharmaceutical Trust and the APPE Trust, were established during the period from 1982 to 1985. South-Trust was named trustee of each of those trusts and AMS was the plan administrator. Both of the ERISA trusts obtained insurance contracts with National Savings and with Hermitage Insurance Company (“Hermitage”). According to Jones, those insurance companies agreed to provide funds to pay the remaining claims if the assets of a trust were depleted, with an understanding that the trust would later refund this amount.
In 1983, Jones and other individuals associated with the five trusts decided to buy their own captive insurance company in order to provide the insurance being written by Hermitage. Jones found an insurance company originally incorporated on August 22, 1968, as Western National Life Insurance Company, which had never engaged in the sale of any insurance or other business. In 1976, its name was changed to National Union Life Insurance Company (“NUL”). Still in 1983, Jones and other individuals formed a holding company named National Union Holding Company (“NUHC”), and NUHC purchased 42%' of the outstanding stock of NUL. In 1985, NUHC acquired the remaining 58%.
SouthTrust, then the trustee for each of the five trusts, entered into written agreements with NUL. Each of the agreements is captioned “Agreement of Reinsurance.” Under each agreement, NUL “assures and reinsures all risk, liabilities, expenses and obligations arising from benefits that the trust has agreed to provide to participants and/or dependents of participants in the trust.” However, the agreement also provides that no benefits shall be paid by NUL until the trust has exhausted all assets held by the trust for the payment of benefits. Except for the APPE Trust, the obligation of NUL was further limited by the proviso that the benefits to be paid by NUL shall not in any event exceed $15,000 for claims submitted by a participant and his or her dependents during one calendar year. A similar agreement limiting NUL’s obligation to the APPE Trust set a $20,000 maximum for similar claims. Each of the trusts was also required under each agreement to transfer to NUL a specified percentage of the average monthly contribution to be held by NUL as a loss reserve. For example, the Tire Dealers Trust had to transfer 300% of the average monthly contributions. The Pharmaceutical Trust was required to transfer 200% of the first monthly contributions.
On December 19, 1986, NUL was placed in receivership. At present there are approximately 2500 claims filed by . beneficiaries of the trusts. The chart below shows the amount due for each trust:
*1304 Tire Dealers Trust $ 15,711.58
APPE Trust $ 325,625.78
Pharmaceutical Trust $ 20,059.21
AAH Trust $1,798,696.24
Cado-Bossier Trust $ 1,591.08
TOTAL $2,161,683.89
By letter dated January 20, 1988, South-Trust made demand upon ALDIGA for the payment of the claims. By letter dated February 2, 1988, ALDIGA refused to pay the claims.
ALDIGA is an unincorporated legal entity established by legislative enactment under § 27-44-1 et seq., Alabama Code 1975 (the Act). According to § 27-44-2, the purpose of the Act creating ALDIGA is to “protect policy owners, insureds, beneficiaries ... and the assignees of life insurance policies, disability insurance policies ... subject to certain limitations, against failure in the performance of contractual obligations due to the impairment or insolvency of the insurer issuing such policies or contracts.”
The issue to be decided is whether the contracts between NUL and the trusts are “covered policies” under the Act. Section 27-44-3 details the types of policies that the Act covers:
“(a) This chapter shall apply to direct life insurance policies, disability insurance policies, annuity contracts, and contracts supplemental to life and disability insurance policies, annuity contracts and contracts supplemental to life and disability insurance policies and annuity contracts issued by persons licensed to transact insurance in this state at any time.”
SouthTrust contends that the policies are direct disability insurance policies and are thus covered by the Act. If this is true, then ALDIGA may be liable for the unpaid claims. § 27-44-8. Under § 27-5-4, “disability insurance” is defined as:
“Insurance of human beings against bodily injury, disablement, or death by accident or accidental means or the expense thereof or against disablement or expense resulting from a sickness and every insurance appertaining thereto. Disability insurance does not include workmen’s compensation.”
Thus, disability insurance by definition insures “human beings.” The agreements between the trusts and NUL concern insurance for the funds in the trust; NUL’s agreement with the trusts did not provide insurance for “human beings.” Accordingly, the insurance is not “disability insurance” within the meaning of § 27-5-4. The insurance does not otherwise fall within the coverage of the Act. Because the insurance in this case does not fall within the coverage provided by the Act, the trial court did not err in entering the summary judgment for ALDIGA.
Although we make no holding in this regard, we are inclined to disagree with SouthTrust’s argument that the insurance in this case is direct insurance. This Court has recently addressed the meaning of the phrase “direct insurance” in Alabama Insurance Guaranty Association v. Pierce, 551 So.2d 310 (Ala.1989). In that case, the Court, citing Zinke-Smith, Inc. v. Florida Insurance Guaranty Association, 304 So.2d 507, 509 (Fla.Dist.Ct.App.1974), held that the term “direct” must be given its plain, ordinary meaning. In Pierce, an insurance company, Early American, stated in a written document to the insured named on the policy that it would pay certain workmen’s compensation benefits in the event that another insurance company failed to pay those benefits. This Court held that that insurance arrangement constituted direct insurance for purposes of the Act. In the present case NUL did not provide such an agreement to the beneficiaries of the trusts; instead, the agreements are between the trusts and NUL. Accordingly, under Pierce, the agreements do not meet the definition of “direct insurance.”
The judgment of the trial court is due to be affirmed.
AFFIRMED.
HORNSBY, C.J., and MADDOX, SHORES and HOUSTON, JJ„ concur.