620 So.2d 465 (1993)
Nicholas LUNA, Plaintiff-Appellant,
v.
AMERICAN BUILDING SYSTEMS, INC., et al., Defendant-Appellee.
No. 92-1239.
Court of Appeal of Louisiana, Third Circuit.
June 9, 1993.
*466 Mel Lewis Credeur, Lafayette, for Nicholas Luna.
Keith Michael Borne, and Joan Elizabeth Gresham, Lafayette, for American Bldg. Systems, Inc.
Chris Gerard Robbins, Lafayette, for Puritan Ins. Co.
Philip E. Roberts, Lafayette, for American Mut. Liability Ins.
Charles A. Schutte, Jr., Baton Rouge, for LIGA.
Roland F. Privat, for Roland F. Privat.
Ronald G. Andrus, for Ronald G. Andrus.
Before GUIDRY and WOODARD, JJ., and CULPEPPER,[*] J. Pro Tem.
WOODARD, Judge.
This is an appeal from a summary judgment in favor of defendant, the Louisiana Insurance Guaranty Association (LIGA). The issue on appeal is whether plaintiff, Nicholas Luna, has a claim covered by LIGA.

FACTS
The relevant undisputed facts are as follows. Plaintiff was an employee of American Building Systems, Inc. (ABS). On February 4, 1982, he suffered a work related injury. Plaintiff received benefits for a *467 period of time, but when ABS and its insurer, Western Preferred Casualty Company, became insolvent, plaintiff filed this claim against LIGA for compensation benefits and medical expenses.
When Western Preferred issued the insurance policy to ABS, Western Preferred was a surplus lines insurer. Surplus lines insurers are not admitted to conduct insurance transactions in Louisiana, and they are not protected by LIGA in the event of their insolvency. However, Western Preferred was a wholly owned subsidiary of Early American Insurance Company, which is admitted to conduct business in Louisiana. Early American reinsured certain policy obligations of Western Preferred and one of the documents issued by Early American was a cut-through endorsement which provided in pertinent part:
EARLY AMERICAN INSURANCE COMPANY hereby agrees that in the event the WESTERN PREFERRED CASUALTY COMPANY fails to pay any loss which is payable under this policy, EARLY AMERICAN INSURANCE COMPANY shall become liable for the loss after receiving written notice and demand for payment from the insured. Any payment shall be subject to the terms and conditions of this policy.
As an admitted insurer, Early American was protected by LIGA if it became insolvent.
During 1984 and 1985, both Western Preferred and Early American were declared insolvent. Plaintiff asserts that LIGA is now liable for his benefits as a result of the contractual relationship between Western Preferred and Early American.
LIGA filed a motion for summary judgment, contending that plaintiff's claim is not a "covered claim" under the Insurance Guaranty Association (IGA) law, because the cut-through endorsement is not a direct insurance policy out of which a covered claim may arise. The trial judge agreed with LIGA and granted its motion for summary judgment, dismissing plaintiff's lawsuit. Plaintiff now appeals this judgment.

LAW
In order to establish a "covered claim' under the IGA law, certain criteria must be met. La.R.S. 22:1379(3) requires that a covered claim arise out of an "insurance policy to which this part applies." (emphasis added). The IGA statutes did not define insurance policy until the legislature amended R.S. 22:1379 in 1989. The definition of "insurance policy" did not become an issue until 1985 when claims were filed against LIGA as a result of the cutthrough endorsement between Early American and Western Preferred. See Wilkerson v. Jimco, Inc., 499 So.2d 1245 (La.App. 4 Cir.1986); Hill v. Robinson, 532 So.2d 795 (La.App. 4 Cir.1988), writ denied, 537 So.2d 1162 (La.1989); and Martin Lumber v. Louisiana Insurance Guaranty Association, 534 So.2d 469 (La.App. 3 Cir.1988), writ denied, 537 So.2d 1162 (La.1989). The courts in these cases held LIGA liable for the claims made under the Early American cut-through endorsement.
In 1989, shortly after the Hill and Martin decisions were rendered, the legislature amended R.S. 22:1379 to provide the following definition of "insurance policy":
(8) "Insurance policy" means an insurance contract as defined in R.S. 22:624, and shall not include an agreement whereby an insurer agrees to assume and carry out directly with the policyholder any of the policy obligations of another insurer, such as cut-through endorsements, reinsurance endorsements, facultative reinsurance agreements, treaty reinsurance agreements, and other such agreements, when either insurer is affiliated with the other. "Affiliated" as used in this Section means that either insurer owns or controls, directly or indirectly, a majority of the voting shares of the other or the controlling interest therein, or that both insurers are so owned or controlled by another.
Thus, shortly after the decisions which found LIGA coverage under the cutthrough endorsement, the legislature reacted by specifically excluding coverage under cut-through endorsements where the insurers are affiliated.
*468 Plaintiff's claim arose before the amendment was enacted. Thus, the issue we must decide is whether R.S. 22:1379(8) is interpretive legislation which applies retroactively to exclude plaintiff's claim from LIGA coverage. The trial court found that the amendment is interpretive. We agree.
As a general rule, laws are deemed to apply prospectively only, unless their language clearly indicates otherwise. La.R.S. 1:2. The exceptions to this rule are laws which are interpretive, remedial, and procedural. Utley-James v. State, Division of Admin., 593 So.2d 1261 (La.App. 1 Cir.1991), writ denied 597 So.2d 1036 (La. 1992); Green v. Liberty Mutual Ins. Co., 352 So.2d 366 (La.App. 4 Cir.1977), writ denied, 354 So.2d 210 (La.1978).
Interpretive legislation does not establish new rights or create new rules. It merely "establishes the meaning that the interpreted statute had from the time of its enactment. It is the original statute, not the interpretive one, that establishes rights and duties." Gulf Oil Corporation v. State Mineral Board, 317 So.2d 576, 591 (La.1974), citing 1 M. Planiol, Treatise on the Civil Law, Sec. 251 at 179 (La.St.L.Inst. trans. 1959); Yiannopoulos Sec. 32.5 at 18 (1975 Supp.).
We agree with the defendant's assertion that an amendment to a statute which provides a definition for a word or phrase used originally in that statute is the quintessential example of an interpretive amendment.
A similar issue was addressed by the Fourth Circuit in H & B Construction v. Louisiana Insurance Guaranty Assoc., 580 So.2d 931, 935 (La.App. 4 Cir.1991), writ denied 587 So.2d 695 (La.1991). When R.S. 22:1379 was amended in 1989, the legislature also added a definition of "ocean marine insurance." The Fourth Circuit found that this definition was simply a clarification of the terms involved, and thus should be applied retroactively. The same can be said about the definition of "insurance policy."
We therefore find the trial court was correct in concluding that R.S. 22:1379(8), which defines "insurance policy," is interpretive and applies retroactively. Because this provision specifically excludes from the definition of insurance policy cut-through endorsements between affiliated insurers, plaintiff has no claim against LIGA. The trial court correctly granted LIGA's motion for summary judgment.
The judgment of the trial court is affirmed. Costs of this appeal are assessed to plaintiff-appellant, Nicholas Luna.
AFFIRMED.
GUIDRY, J., dissents and assigns written reasons.
GUIDRY, Judge, dissenting.
The majority concludes that an amendment to La.R.S. 22:1379 which changes the definition of "insurance policy" so as to exclude as "direct insurance" an agreement whereby an insurer agrees to assume and carry out directly with a policyholder any of the then policy obligations of another insurer, known as a "cut-through" endorsement, is interpretive legislation and therefore applicable retroactively. I respectfully disagree.
Prior to the amendment of the statute in 1989, there were at least three cases by the appellate courts of this state, two from the Fourth Circuit[1] and one from this circuit, which held that "cut-through" endorsements constitute direct insurance for purposes of LIGA coverage. In the case decided by this circuit, Martin Lumber v. Louisiana Insurance Guaranty Association, 534 So.2d 469 (La.App. 3rd Cir.1988), writ denied, 537 So.2d 1162 (La.1989), this court stated "[w]e determine, as a matter of law, that the Early American endorsement constitutes direct insurance obligating Early American to Martin for purposes of LIGA coverage". The 1989 amendment to Louisiana R.S. 22:1379 constitutes a substantive change in the law, operates to *469 overrule legislatively the holdings in these cases and, in my view, should only be applied prospectively.
In a very similar case, Segura v. Frank, 615 So.2d 516 (La.App. 3rd Cir.1993), we held an analogous change in the law to be substantive and thus applicable prospectively only. In Segura, we relied on St. Paul Fire & Marine Insurance Co. v. Smith, 609 So.2d 809 (La.1992), wherein the Supreme Court considered an amendment to the worker's compensation statute and determined that such amendment was substantive and should be applied prospectively only. In so concluding, our Supreme Court noted that the amendment was "... an obvious legislative attempt to change the law as construed by this court The same holds true in this case. The 1989 amendment to La.R.S. 22:1379 changes the law as previously construed by the courts of this state and thus is substantive and should be applied prospectively only. For these reasons, I respectfully dissent.
NOTES
[*] Honorable William A. Culpepper participated in this decision by appointment of the Louisiana Supreme Court as Judge Pro Tempore.
[1] Wilkerson v. Jimco, Inc., 499 So.2d 1245 (La. App. 4th Cir.1986); Hill v. Robinson, 532 So.2d 795 (La.App. 4th Cir.1988), writ denied, 537 So.2d 1162 (La.1989).