PARRO, Judge.
Plaintiff filed a devolutive appeal from a final judgment which denied plaintiffs motion for a new trial after defendant’s motion for summary judgment dismissing plaintiffs claim was granted. The trial court ruled that LSA-R.S. 22:1879(8) applied retroactively to exclude coverage under a cut-through endorsement on plaintiffs insurance policy. We reverse.

ISSUE

The issue before this court is whether Act No. 688 of the 1989 Louisiana legislature, which amended LSA-R.S. 22:1379 by adding subparagraph (8) specifically excluding “cut-through” endorsements, should be applied retroactively to a claim which arose prior to the amendment.

FACTS

Plaintiff-appellant, International Matex Tank Terminals (“IMTT”), was insured by Western Preferred Casualty Company (‘Western Preferred”), a surplus line insurer not admitted to do business in Louisiana. The insurance policy contained a cut-through endorsement whereby Early American Insurance Company (“Early American”) agreed to pay directly to the insured all claims covered by the policy should Western Preferred fail to pay any loss. Early American was admitted to transact insurance business in Louisiana, and therefore, protection was afforded by the defendant-appellee, Louisiana Insurance Guaranty Association (“LIGA”) in the event Early American became insolvent.
In March of 1985, IMTT was cast in judgment in a personal injury suit filed as a result of an accident which occurred on June 8, 1988, and subsequently paid the sum of $128,482.19 in satisfaction of that judgment. However, by that time, both Western Preferred and Early American had become insolvent. Based on Early American’s insolvency, IMTT filed this suit against LIGA seeking indemnification, as well as attorney’s fees and penalties pursuant to LSA-R.S. 22:658.
The trial court, in oral reasons, acknowledged that earlier cases held that cut-through endorsements issued by Early American as part of Western Preferred’s insurance policy were direct insurance policies out of which covered claims against LIGA could arise. However, the trial court further noted that the 1989 amendment to LSA-R.S. 22:1379 indicated that those courts were incorrect in their interpretation of the law. Reasoning that this amendment did not create a new rule or enact new law, the trial court found that the amendment merely established legislatively the original meaning of the statute, and therefore, could be applied retroactively.

PRE-AMENDMENT LAW AND JURISPRUDENCE

A review of the law in effect at the time this case arose shows the purpose of the Insurance Guaranty Association Law set forth in LSA-R.S. 22:1376 is to provide:
... a mechanism for the payment of covered claims under certain insurance policies to avoid excessive delay in payment and to avoid financial loss to claimants or policyholders because of the insolvency of an insurer, to assist in the detection and prevention of insurer insolvencies, and to provide an association to assess the cost of such protection among insurers. (Emphasis added)
The applicable statutes further provide that, except for the exclusion of certain types of insurance (none of which are relevant to this case), the Insurance Guaranty Association Law “shall apply to all kinds of direct insurance” and “shall be liberally construed” to effect the purpose stated above. LSA-R.S. 22:1377-1378. In fact, the Supreme Court, in Senac v. Sandefer, 418 So.2d 543, 546 (La.1982), declared that “[t]he provisions of the Insurance Guaranty Association Act must be interpreted to protect claimants and policyholders and to advance their interests rather, than the interests of the association.”
Under this statutory scheme, Early American was a “member insurer” by virtue of its *714 endorsement and license to transact insurance business in this state. LSA-R.S. 22:1379(5). When a member insurer becomes insolvent, LIGA steps into its shoes and becomes obligated to the extent of the covered claims against that insurer, subject to statutory limits. LSA-R.S. 22:1382. “Covered claims” are those unpaid claims arising out of and within the coverage of an insurance policy of the insolvent insurer. LSA-R.S. 22:1379(3).
When Early American was declared insolvent in 1985, claimants began seeking recovery from LIGA. LIGA’s refusal to pay these claims generated litigation over whether the cut-through endorsements issued by Early American to Western Preferred constituted “direct insurance” for purposes of LIGA coverage. At that time, there was no definition, or even mention, of the term “cut-through” endorsement in the Guaranty Association Law. Nor was there a definition of the terms “insurance policy” or “direct insurance,” even though both terms were referred to in the statutes. The jurisprudence which developed as a result of the Western Preferred and Early American insolvencies, however, consistently held that the cut-through endorsement issued by Early American directly obligated Early American to the insured in the event Western Preferred failed to pay, and this direct obligation constituted “direct insurance” as a matter of law, thereby affording protection to the insured by LIGA.[1]

1989 AMENDMENT AND JURISPRUDENCE

In an apparent effort to change this jurisprudential interpretation, the legislature amended LSA-R.S. 22:1379 by Act No. 688 of 1989, which added the following definition:
(8) “Insurance policy” means an insurance contract as defined in R.S. 22:624, and shall not include an agreement whereby an insurer agrees to assume and carry out directly with the policyholder any of the policy obligations of another insurer such as cut-through endorsements, reinsurance endorsements, facultative reinsurance agreements, treaty reinsurance agreements, and other such agreements, whether either insurer is affiliated with the other. “Affiliated” as used in this section means that either insurer owns or controls, directly or indirectly, a majority of the voting shares of the other or the controlling interest therein, or that both insurers are so owned or controlled by another. (Emphasis added)
The main issue raised as a result of this legislation was whether the amendment could be applied retroactively to preclude recovery against LIGA where cut-through endorsements existed.
In Johnson v. Vinson Guard Service Inc., 577 So.2d 64 (La.App. 1st Cir.1990), this court did not specifically address the issue of retroactivity, but obviously viewed the amendment as operating prospectively only. But, in Luna v. American Building Systems, Inc., 620 So.2d 465 (La.App. 3rd Cir.1993), a ^divided panel of that court did address the issue and held that the 1989 amendment was interpretive in nature and applied retroactively. However, Judge Guidry dissented and observed that the amendment constituted a substantive change in the law since it legislatively overruled the pre-amendment cases, and therefore, it was his opinion that the amendment should be applied prospectively. The apparent conflict between the two circuits was resolved when writs were granted in the Luna case, and the Supreme Court reversed the Third Circuit for the reasons assigned by Judge Guidry. Luna v. American Building Systems, Inc., 629 So.2d 361, No. 93-C-1896 (La. Nov. 5, 1993). Accordingly, this court holds that the trial court erred in applying the 1989 amendment retroactively in this ease.

DECREE

For the foregoing reasons, the judgment of the trial court is reversed and this case is remanded for further proceedings.
*715 Costs of this appeal in the amount of $258.48 are assessed against LIGA.
REVERSED AND REMANDED.

. Martin Lumber Partnership v. Louisiana Insurance Guaranty Association, 534 So.2d 469 (La.App. 3rd Cir.1988), writ denied, 537 So.2d 1162 (La.1989); Hill v. Robinson, 532 So.2d 795 (La.App. 4th Cir.1988), writ denied, 537 So.2d 1162 (La.1989); Wilkerson v. Jimco, Inc., 499 So.2d 1245 (La.App. 4th Cir.1986).