Larry A. BLACK, et al.

v.

**REBSTOCK DRILLING COMPANY, et al.**

Civ. A. No. 84–1454.

United States District Court,
W.D. Louisiana,
Lafayette Division.

Nov. 17, 1993.

Edwin G. Preis, Jr., Ward Lafleur, Preis & Kraft, Lafayette, LA, for plaintiffs.

Neal D. Hobson, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, LA, for Rebstock Drilling Co.

Charles A. Schutte, Jr., Mathews, Atkinson, Guglielmo, Marks & Day, Baton Rouge, LA, for Louisiana Ins. Guar. Ass'n.

## OPINION

NAUMAN S. SCOTT, District Judge.

### I. INTRODUCTION.

Plaintiffs Larry A. Black and Marilyn R. Black filed suit in this court on May 29, 1984 to recover damages for personal injuries under the Jones Act. As a result of the insolvency proceedings of Black's employer, Rebstock Drilling Company ("Rebstock"), and Rebstock's insurers, Western Preferred Casualty Company ("Western Preferred") and Early American Insurance Company ("EAIC"), plaintiffs now argue their claim is covered under the Insurance Guaranty Association Act (the "Guaranty Act") and seek relief against the Louisiana Insurance Guaranty Association ("LIGA").

With the consent of the court, both parties have agreed that this matter would be submitted on briefs in lieu of a trial. The parties have stipulated to all relevant issues of fact. Having considered the trial briefs and stipulations of fact between the parties, we now issue our statement of facts and conclusions of law.

### II. STATEMENT OF FACTS.

On June 16, 1983, Larry A. Black was working as a roughneck as a member of the crew of REBSTOCK 4, an inland barge owned by Rebstock which qualified as a vessel under the Jones Act. Black was an employee of Rebstock and was injured while breaking out drill collars when a slack snub line tightened suddenly and knocked Black into the drill pipe injuring his back. The parties, plaintiffs and LIGA, have stipulated that Black was injured in part due to the fault of the members of the crew of the REBSTOCK 4 and to the unseaworthiness of the REBSTOCK 4. As a result, it has been agreed that Rebstock is liable to Black under the Jones Act in the amount of $150,000.00— 75% of the fault being apportioned to Reb-

stock and 25% to Black. The agreed maximum liability of the LIGA under the Guaranty Act for plaintiffs' claim is $49,900.00, plus legal interest from the date of judicial demand.

On June 16, 1983, the date of the accident, Rebstock was insured by Western under a standard workers' compensation and employer's liability policy ("WC/EL policy") with a maritime endorsement. Western, a wholly-owned subsidiary of EAIC and Colorado domiciliary, was not authorized to transact insurance business in the State of Louisiana but did so as a non-admitted surplus lines insurer.[1] EAIC, an Alabama domiciliary which reinsured Western Preferred's obligations through a cut-through endorsement, was authorized to transact insurance business in the State of Louisiana. Under the cut-through endorsement, EAIC became liable for the losses Western Preferred failed to pay under its policy upon written notice and a demand for payment by the insured.

Plaintiffs filed suit against Rebstock on May 29, 1984 seeking damages for personal injuries under the Jones Act. Shortly thereafter, plaintiffs' luck began to sour. On February 1, 1985, the Montgomery County Circuit Court in the State of Alabama entered an order placing EAIC in liquidation, and declared the company to be insolvent. On April 16, 1986, Western Preferred was also declared insolvent and placed in liquidation under the supervision of the District Court of the City and County of Denver, Colorado. Black's employer, Rebstock Drilling Company, then filed for Chapter 11 bankruptcy protection on October 30, 1986 in the United States Bankruptcy Court for the Eastern District of Louisiana. Pursuant to 11 U.S.C. § 362(a), that action stayed all proceedings against Rebstock.

On March 24, 1987, plaintiffs joined LIGA as an additional defendant in this lawsuit seeking relief against Rebstock's insolvent insurers under the Guaranty Act. On September 15, 1988, plaintiffs moved to lift the bankruptcy stay against Rebstock to determine Rebstock's liability. Plaintiffs' motion was denied on October 11, 1988. By order dated October 31, 1988, we dismissed the plaintiffs' lawsuit without prejudice, ruling that the plaintiffs could reopen the case within thirty days of a lifting of the bankruptcy stay. The bankruptcy stay was lifted by the United States Bankruptcy Court for the Eastern District of Louisiana on February 19, 1993. On March 17, 1993, plaintiffs filed a motion to reopen this lawsuit. That motion was granted on March 22, 1993.

The general legal issue that remains is whether the LIGA can be held liable under the Guaranty Act for plaintiffs' claim against Black's insolvent employer and his employer's insolvent insurers. Plaintiffs contend that coverage is available under the Guaranty Act because the insurance policy at issue is not "ocean marine" insurance under the 1989 amendments to the Guaranty Act. Plaintiffs argue, alternatively, that even if the policy is "ocean marine" insurance, the amendments are substantive and cannot be applied retroactively. Plaintiffs additionally contend that the cut-through endorsement by EAIC is an "insurance policy" under the Guaranty Act because the 1989 amendment excluding cut-through endorsements from the coverage of the Guaranty Act is also substantive and cannot be applied retroactively. Defendant LIGA disputes both contentions and claims that coverage is unavailable under the Guaranty Act for the insurance policy at issue.

## III. CONCLUSIONS OF LAW.

### A. The Ocean Marine Exclusion.

Under the express terms of its provisions, the Guaranty Act is to be liberally construed "to avoid financial loss to claimants or policyholders because of the insolvency of an insurer ..." La.Rev.Stat.Ann. § 22:1376 (West 1993). *See also Nasello v. Transit Casualty Co.*, 530 So.2d 1114, 1115 (La.1988). By its terms, however, the Guaranty Act excludes

---

1. Under Louisiana law, non-admitted surplus lines insurers are exempt from numerous statutory requirements, including the requirement of membership in the LIGA. Policyholders of surplus lines insurers are not protected by the LIGA in the event of their insurer's insolvency. The surplus lines insurance market is only available to Louisiana residents who are unable to obtain insurance coverage from authorized insurers. La.Rev.Stat.Ann. § 22:1257 (West 1987).

coverage for "ocean marine" insurance. La. Rev.Stat.Ann. § 22:1377. Unfortunately, the statute does so without defining the term "ocean marine" and courts reached disparate results on the issue of whether workers' compensation and employer's liability policies with maritime endorsements qualify for the "ocean marine" exclusion. *See, e.g., Coe v. L & L Sandblasting, Inc.,* 707 F.Supp. 874 (W.D.La.1988) (holding that a standard WC/EL policy with a maritime endorsement is an ocean marine policy); *Green v. SHRM Catering, Inc.,* 710 F.Supp. 174 (W.D.La. 1987) (holding that a standard employer's liability policy is not an ocean marine policy).

In an attempt to resolve the conflict, the United States Fifth Circuit Court of Appeals certified this issue to the Louisiana Supreme Court on May 24, 1988. *See Deshotels v. SHRM Catering Servs., Inc.,* 845 F.2d 582 (5th Cir.1988). The Louisiana Supreme Court accepted the certified question and unequivocally held that the ocean marine exclusion in the Guaranty Act does not apply to employer's liability policies which incidentally cover risks associated with maritime activities. *Deshotels v. SHRM Catering Servs., Inc.,* 538 So.2d 988, 993 (La.1989). The court determined that, by the express terms of the Guaranty Act, the term "ocean marine" is synonymous with "traditional marine insurance ... property insurance on hulls, freight and cargoes." *Id.* at 992. Significantly, the court interpreted the limitations of the Guaranty Act to apply to "different kinds of insurance policies, rather than different risks" and

noted the necessity of a liberal construction of the Guaranty Act to protect policyholders of insolvent insurers. *Id.* at 993.

LIGA argues, however, that the recent legislative amendments to the Guaranty Act make it clear that the ocean marine exclusion includes WC/EL insurance.[2] LIGA additionally contends that these amendments are interpretive and should be given retroactive effect.

Following the enactment of the amendments, both the Fifth Circuit and the Louisiana Supreme Court have determined that the ocean marine exclusion still does not include WC/EL insurance. *See Sifers v. General Marine Catering Co.,* 892 F.2d 386 (5th Cir. 1990) (explicitly declining to reconsider the validity of *Deshotels* in the wake of the amendments); *Backhus v. Transit Casualty Co.,* 549 So.2d 283 (La.1989) (also declining to reconsider the validity of *Deshotels* after the 1989 amendments to the Guaranty Act). In *Backhus,* the Louisiana Supreme Court determined that a protection and indemnity policy fell within the ocean marine exclusion but that, under the court's prior ruling in *Deshotels,* a workers' compensation policy which incidentally covered maritime risks did not. *Backhus,* 549 So.2d at 283.[3] The *Sifers* court and the *Backhus* court both based their decisions on the belief that the 1989 amendments to the Guaranty Act do not alter the ocean marine exclusion as it applies to

---

2. Enacted as La.Rev.Stat.Ann. § 22:1379(9), the recent legislative amendments defined the term "ocean marine insurance" to include:

> marine insurance as defined in R.S. 22:6(13) except for inland marine, as well as any other form of insurance, regardless of the name, label or marketing designation of the insurance policy, which insures against maritime perils or risks and other related perils or risks, which are usually insured against by traditional marine insurances such as hull and machinery, marine builders' risks, and marine protection and indemnity. Such perils and risks insured against include without limitation loss, damage or expense or legal liability of the insured for loss, damage or expense arising out of or incident to ownership, operation, chartering, maintenance, use, repair or construction of any vessel, craft or instrumentality in use in ocean or inland waterways, *including liability of the insured for personal injury, illness or*

> *death or for loss* or damage to the property of the insured or another person.
> La.Rev.Stat.Ann. § 22:1379(9) (West 1993) (emphasis added).

3. LIGA cites *H & B Const. v. Louisiana Insurance Guar. Ann'n,* 580 So.2d 931 (La.Ct.App. 4th Cir. 1991) for the proposition that liability under the Jones Act is a risk covered by "ocean marine" insurance and that the 1989 amendments are interpretive and must be given retroactive effect. Although the instant case also involves Jones Act liability, it is the type of policy, not the type of risk, that is determinative of LIGA liability under *Deshotels* and its progeny. *See Deshotels,* 538 So.2d at 993. In *H & B,* the kind of insurance at issue was a protection and indemnity policy, not a WC/EL policy. As this court pointed out, protection and indemnity policies fall within the ocean marine exclusion under *Backhus.*

WC/EL policies with maritime endorsements.

Mindful that a state's supreme court is the final arbiter of its own state law and a federal court does not second-guess a state's application of its own law, *National Educ. Ass'n, Inc. v. Lee County Bd. of Pub. Instruction*, 467 F.2d 447, 450 (5th Cir.1972), we find that the 1989 amendments to the Guaranty Act do not alter the prior interpretation of the ocean marine exclusion. Thus, it is unnecessary for this court to reach the issue of whether the amendments apply prospectively or retroactively. Pursuant to the Louisiana Supreme Court's decision in *Deshotels*, therefore, we find that the WC/EL policy issued to Rebstock by Western Preferred does not fall within the "ocean marine" exclusion of La.Rev.Stat.Ann. § 22:1377 and is not excluded from coverage under the Guaranty Act on that basis.

B. The Cut–Through Endorsement.

As discussed in our statement of facts, EAIC was authorized to transact insurance business in the State of Louisiana while Western Preferred did business in Louisiana only as a non-admitted surplus lines insurer. Since the Guaranty Act excludes surplus lines insurers from coverage of the LIGA, plaintiffs must establish that EAIC's cut-through endorsement of Western's policy obligations constitutes an "insurance policy" to which the Guaranty Act applies. *See* La. Rev.Stat.Ann. § 22:1379(3) (West 1993). If plaintiffs cannot establish that EAIC's cut-through endorsement qualifies as an "insurance policy" under the Guaranty Act, they do not have a "covered claim" and liability cannot be imposed against the LIGA. *See id.*

Prior to the 1989 amendments to the Guaranty Act, Louisiana courts confronted the issue of whether a cut-through endorsement issued by an authorized insurer is an "insurance policy" upon which a "covered claim" may arise. In a trilogy of Louisiana appellate cases involving EAIC cut-through endorsements, courts held that cut-through endorsements issued by an authorized insurer as part of an insurance policy issued by a surplus lines insurer are insurance policies to which the Guaranty Act applies. *See Hill v.*

*Robinson*, 532 So.2d 795 (La.Ct.App. 4th Cir. 1988), *writ denied*, 537 So.2d 1162 (La.1989); *Martin Lumber Partnership v. Louisiana Ins. Guar. Ass'n*, 534 So.2d 469 (La.Ct.App. 3d Cir.1988); *Wilkerson v. Jimco, Inc.*, 499 So.2d 1245 (La.Ct.App. 4th Cir.1986).

The Louisiana legislature subsequently amended the Guaranty Act to provide that "'insurance policy' ... shall not include an agreement whereby an insurer agrees to assume and carry out directly with the policyholder any of the policy obligations of another insurer, such as cut-through endorsements ..." La.Rev.Stat.Ann. § 22:1379(8) (West 1993). Since EAIC's cut-through endorsement is expressly excluded from coverage of the Guaranty Act under the 1989 amendments, the decisive issue becomes whether the 1989 amendments apply retroactively or prospectively. If the amendments apply retroactively, plaintiffs claim is excluded from coverage of the Guaranty Act. Conversely, if the amendments apply prospectively only, plaintiffs' claim is covered by the Guaranty Act and liability can be imposed against the LIGA.

Pursuant to Article 6 of the Louisiana Civil Code, "in the absence of contrary legislative expression, substantive laws apply prospectively only." La.Civ.Code Ann. art. 6 (West 1987). Article 6 also provides that "[p]rocedural and interpretative laws apply both prospectively and retroactively, unless there is legislative expression to the contrary." *Id.* Comment (d) explains that "an interpretative law is remedial in the sense of remedying an error or ambiguity in the prior law." *Id.* at cmt. (d). In determining whether laws are substantive or interpretive, Louisiana courts apply a general presumption that laws are substantive and apply only prospectively. *See State v. Alden Mills*, 8 So.2d 98 (La.App.1942). Nevertheless, the presumption of prospective application is rebuttable and has, on many occasions, been overcome.

Although the Louisiana Supreme Court recognizes the value of *stare decisis* in guiding judicial interpretations of broad legislation, individual caselaw is, according to civilian principles, "secondary information."

*Ardoin v. Hartford Accident & Indem. Co.,* 360 So.2d 1331, 1334 (La.1978). Prior judicial decisions, such as *Hill, Martin* and *Wilkerson,* are merely interpretive of the law and do not, under Louisiana law, effect a substantive change in the law. *Id.* According to the Louisiana Supreme Court, judicial decisions are "only evidence of what the court thinks the law is." *Norton v. Crescent City Ice Mfg. Co., Inc.,* 178 La. 135, 150 So. 855, 858 (1933). Under applicable principles of civil law, therefore, subsequent expressions by the legislature of legislative intent, including the legislative amendments at issue, outweigh prior judicial decisions interpreting that intent.

■ Legislative amendments that remedy an incorrect or ambiguous interpretation of statutory law in a prior judicial decision, furthermore, are themselves interpretive of the original legislation and must, under Article 6 of the Civil Code, be applied retroactively. *See* La.Civ.Code, art. 6, cmt. (d) (West 1987) (explaining that interpretive laws are "remedial in the sense of remedying an error or ambiguity in the prior law"). This premise has been applied by both Louisiana courts and the Fifth Circuit. In *Barron v. State Dept. of Public Safety,* 397 So.2d 29, 30 (La.App.2d Cir.1981), the court held that when the legislature has amended a statute to overrule a prior judicial decision which incorrectly interpreted its legislative intent, the amendment is retroactive because the amendment merely determines the meaning of existing law and has not created new law. Similarly, in *Laubie v. Sonesta Int'l Hotel Corp.,* 752 F.2d 165, 168 (5th Cir.1985), a Louisiana diversity case, the Fifth Circuit held that a legislative amendment which clarifies the original intent of the legislature by a more expansive phrasing is interpretive and must be given retroactive effect. *Id.* [4]

■ As was the case in *Barron* and *Laubie,* the 1989 revision to section 1379 of the Guaranty Act was an attempt to overrule prior judicial interpretations of the Guaranty Act by interpretive legislation. By expanding the definition of the term "insurance policy" to specifically exclude cut-through endorsements, the legislature clarified the meaning of existing statutory law while creating no rights or obligations not originally intended by the legislature. The Louisiana Third Circuit Court of Appeals has specifically agreed with this analysis. *See Luna v. American Bldg. Sys, Inc.,* 620 So.2d 465, 468 (La.App. 3d Cir.1993) (holding that the amendment at issue, La.Rev.Stat.Ann. § 22:1379(8), is an interpretive clarification of the term "insurance policy" and applies retroactively). The *Luna* court explained that "an amendment to a statute which provides a definition for a word or phrase used originally in that statute is the quintessential example of an interpretive amendment." *Id.*

■ Plaintiffs argue alternatively that even if the amendments are retroactive, they cannot be applied retroactively to disturb vested rights. Indeed, according to a well settled rule of statutory interpretation, procedural and interpretive laws will not be applied retroactively when doing so would violate vested rights. *See Ardoin,* 360 So.2d 1331 (La.1978). In the instant case, however, plaintiffs had no vested rights against the LIGA prior to the 1989 amendments. It is true that plaintiff's contractual rights against his own insurers vested shortly after his injury. It does not follow, however, that plaintiff's rights against the LIGA, which are governed exclusively by the Guaranty Act, also vested at that time. As determined by the court in *H & B Const. Co. of La., Inc. v. Louisiana Ins. Guar. Ass'n,* 580 So.2d 931 (La.App. 4 Cir.1991), an insurance contract between an employer and an insolvent insurer does not automatically create vested rights against the LIGA under the Guaranty Act even if courts had interpreted the Guaranty Act to cover the claim at issue.

---

4. Rejecting the apparent unfairness of retroactive application of interpretive law, the *Laubie* court explained that "interpretive laws do not establish new rules; they merely determine the meaning of existing laws and may thus be applied to facts occurring prior to their promulgation." *Laubie,* 752 F.2d at 168. Addressing the subject of interpretive legislation, the Louisiana Supreme Court has stated that "genuine interpretive legislation is a recognized function of legislatures in systems of codified laws, being considered a correlative of the power to legislate." *Gulf Oil Corp. v. State Mineral Bd.,* 317 So.2d 576, 591 (La.1974).

Retroactive application of La.Rev. Stat.Ann. § 22:1379(8) does not, therefore, disturb any vested rights of the plaintiff. Since EAIC's cut-through endorsement is expressly excluded from coverage of the Guaranty Act under the 1989 amendments and must be applied retroactively as interpretive legislation, plaintiff's claim, which no longer qualifies because the cut-through endorsement is not an "insurance policy," is excluded from coverage of the Guaranty Act.

## C. CONCLUSION.

Although the workers' compensation and employer's liability policy issued to Rebstock by Western Preferred does not fall within the "ocean marine" exclusion of La.Rev.Stat. Ann. § 22:1377, plaintiff's claim is nonetheless excluded from coverage under the Guaranty Act by a retroactive application of La. Rev.Stat.Ann. § 22:1379(8). LIGA, as a result, is not liable for plaintiff's claim against plaintiff's employer's insolvent insurers. It should be noted that this decision does not affect plaintiff's right to seek damages against the receivers of Western Preferred and EAIC in bankruptcy.