**Dwayne BLAIR, et al.**

v.

**SEALIFT, INC.**

**Civ. A. No. 84–5367.**

United States District Court,
E.D. Louisiana.

March 23, 1994.

---

**73.** Def.'s Ex. 57 at 13–14.

**74.** Tr. Vol. II at 181, 133.

Lynn L. White and S. Daniel Meeks, Abbott & Meeks, New Orleans, LA, for third-party plaintiff, Sealift, Inc.

Daniel R. Atkinson, T.A., Judith R. Atkinson, Carey J. Gugliemo, Thomas E. Balhoff, Baton Rouge, LA, for Louisiana Ins. Guar. Assoc.

Perrin Butler, Ltd., Perrin C. Butler, T.A., Robert C. Stern, Metairie, LA, for Dwayne Blair and Gloria Blair.

HEEBE, District Judge.

This cause came on for hearing on a previous day on the motion of defendant and third-party plaintiff, Sealift, Inc., objecting to the Magistrate Judge's report and recommendation. Both parties agreed to waive oral argument.

The Court, having studied the legal memoranda submitted by the parties, is now fully advised in the premises and ready to rule.

*REASONS*

## I. FACTS AND PROCEDURAL HISTORY

This action arose out of a suit by a crew member against his employer for injuries allegedly sustained on July 23, 1984. Plaintiff, Dwayne Blair, was employed by defendant and third-party plaintiff, Sealift, Inc. (Sealift), as a deckhand and crew member of the M/V SHERRIE M. Plaintiff and his wife filed suit against Sealift under the Jones Act, 46 App.U.S.C. § 688, and general maritime law. At the time of the incident, Sealift was insured by a "Standard Workmen's Compensation and Employer's Liability" insurance policy (WC/EL), issued by Transit Casualty Company (Transit), an admitted insurer in the State of Louisiana, that provided coverage for the plaintiff's injuries. As an admitted insurer in the State of Louisiana, Transit was a member of the Louisiana Insurance Guaranty Association (LIGA). On December 3, 1985, the Commissioner of Insurance for the State of Louisiana declared Transit to be an insolvent insurer.

LIGA is designed to reinsure the obligations of insolvent insurers who do business in Louisiana. *Sifers v. General Marine Catering Co.*, 892 F.2d 386, 388 (5th Cir.1990). In the event that a member becomes insolvent, LIGA assumes all the obligations of the direct insurance policies underwritten by the insolvent insurer, unless the policy is one which is specifically excluded from LIGA coverage by La.Rev.Stat. § 22:1377. *Id.* La.Rev.Stat. § 22:1377 states that the Insurance Guaranty Association Fund "shall apply to all kinds of direct insurance, except life, health and accident, title, disability, mortgage guaranty, financial guaranty, . . . and *ocean marine insurance.*" La.Rev.Stat.Ann. § 22:1377 (West Supp.1994) (emphasis added). As a result of these exceptions, LIGA can not be held at risk for claims made by policyholders who possessed ocean marine insurance written by insolvent carriers. *Id.* Since Transit was a member of LIGA, LIGA

would be obligated to provide protection to Transit's insureds for any claims which arose under an insurance policy issued by Transit, unless the claim arose from one of the exempted coverages.

On January 10, 1986, Sealift made written demand upon LIGA for protection from the plaintiffs' claims. On January 29, 1986, LIGA rejected Sealift's demand on the ground that the insurance policy was "ocean marine insurance," which is specifically excluded from coverage by LIGA under La. Rev.Stat. § 22:1377. Sealift then filed a third-party complaint with this Court on February 25, 1986, seeking protection from LIGA for plaintiffs' claims.

In the fall of 1986, during the pendency of this action, Sealift settled with the plaintiffs. On June 3, 1986, Sealift filed a motion for summary judgment against LIGA, seeking a determination from the Court that LIGA was obligated to pay Sealift's attorneys' fees and costs.[1] On August 19, 1986, this Court granted Sealift's motion for summary judgment.

On October 14, 1986, LIGA appealed the ruling of this Court to the United States Court of Appeals for the Fifth Circuit,[2] raising several issues, two of which are relevant to Sealift's claim for attorneys' fees: (1) whether LIGA was obligated to pay pre-insolvency attorneys' fees incurred by an insured and (2) whether LIGA is liable for attorneys' fees incurred in prosecuting a claim against LIGA for coverage under a policy of insurance issued by an insolvent member. The appeal was consolidated by the Fifth Circuit with other cases in which the plaintiffs sought recovery from LIGA as a reinsurer in *Deshotels v. SHRM Catering Services Inc.*, 842 F.2d 116 (5th Cir.1988). Before deciding the consolidated appeals, the Fifth Circuit certified the issue of the scope of the "ocean marine exclusion" under LIGA to the Louisiana Supreme Court in *Deshotels v. SHRM Catering Services Inc.*, 845 F.2d 582 (5th Cir.1988). The Fifth Circuit certi-

---

1. Sealift's motion for summary judgment against LIGA originally was for protection from LIGA for any liability which Sealift owed to Blair, as well as for any attorneys' fees incurred. After *Sifers*, 892 F.2d 386, LIGA reimbursed Sealift for

the settlement amount paid to Blair and the only remaining issue is LIGA's liability for attorneys' fees.

2. *Blair v. Sealift, Inc.*, Appeal No. 86–3760.

fied the following question to the Louisiana Supreme Court:

> Does this claim for maritime-related injuries, brought on the Standard Workmen's Compensation and Employers' Liability policy with a marine endorsement, involve 'ocean marine insurance' so as to be excluded, by virtue of La.Rev.Stat. § 22:1377, from the coverage of the Insurance Guaranty Association Fund?

*Id.* at 585.

In *Deshotels v. SHRM Catering Services, Inc.*, 538 So.2d 988, 993 (La.1989), the Louisiana Supreme Court answered the Fifth Circuit's certified question, holding that the ocean marine exclusion does *not* apply to employer's liability policies which incidentally cover risks associated with maritime activities. The Fifth Circuit then applied the *Deshotels* rationale, as well as the rationale in the Louisiana Supreme Court's decision in *Backhus v. Transit Casualty Co.*, 549 So.2d 283 (La.1989), in *Sifers v. General Marine Catering Co.*, 892 F.2d 386 (5th Cir.1990).[3] The Fifth Circuit held that WC/EL policies are not "ocean marine insurance." *Sifers*, 892 F.2d at 391, *citing Deshotels*, 538 So.2d at 993. As WC/EL policies are not "ocean marine insurance," claims for maritime-related injuries brought on a "Standard Workman's Compensation and Employer's Liability" policy with a marine endorsement are not excluded from coverage under La.Rev.Stat. § 22:1377 and LIGA must assume such claims. *Deshotels*, 538 So.2d at 993.

The *Sifers* court then addressed the issue of LIGA's obligation to pay attorneys' fees incurred before the insolvency of the insurer, fees incurred after insolvency, and fees incurred in successfully prosecuting a claim against LIGA. *Id.* 892 F.2d at 399. The court concluded that LIGA should be liable for attorneys' fees incurred by the *insured*

prior to the insurer's bankruptcy. *Id.* As to the issue of LIGA's obligation to pay pre-insolvency attorneys' fees incurred by law firms employed by the insolvent insurer, the court stated that LIGA's duty to pay does not extend under the Louisiana Insurance Guaranty Association Law. (IGAL) to the bills from law firms under contract with the insolvent insurer but not the insured. *Sifers*, 892 F.2d at 400. As to post-insolvency legal fees, the court held that LIGA was not liable for fees and costs incurred by law firms with no contractual relationship with the insured. *Id.* As a further limit on LIGA's liability for attorneys' fees, the court stated that LIGA cannot be liable for legal services rendered in defense of a claim which is nonrecoverable under the exception of LIGA coverage for ocean marine insurance. *Id.*

With respect to attorneys' fees incurred in successfully prosecuting a claim against LIGA, the *Sifers* court found that LIGA would be *liable* for such fees only if LIGA "acted arbitrarily, capriciously, or without probable cause." *Id.* at 399. The Fifth Circuit, quoting from *Deshotels*,[4] stated that the determination of whether LIGA had sufficient good-faith reasons to deny coverage is an "essentially factual question" to be determined by the district courts. *Id.* The court then remanded the separate case of *Blair v. Sealift, Inc.* to this Court for further proceedings consistent with the *Sifers* opinion. *Sifers*, 892 F.2d at 403.

On November 7, 1990, this Court referred the matter to the magistrate judge for a determination of the issue of attorneys' fees. The magistrate judge issued his decision on February 26, 1992, finding in favor of LIGA on the ground that plaintiff's claim for damages was a claim for "ocean marine insurance," as that term is defined for the first time in La.Rev.Stat. § 22:1379(9),[5] passed by

---

3. *Sifers* remained the consolidated appeals case, which included *Blair.*

4. 842 F.2d at 120.

5. In the amendment to La.Rev.Stat. § 22:1379(9), the legislature added a definition of ocean marine insurance:

> Ocean marine insurance includes marine insurance as defined in R.S. 22:6(13), except for inland marine, as well as any other form of

insurance, regardless of the name, label or marketing designation of the insurance policy, which insures against maritime perils or risks and other related perils or risks, which are usually insured against by traditional marine insurances such as hull and machinery, marine builders' risks, and marine protection and indemnity.

La.Rev.Stat.Ann. § 22:1379(9) (West 1994).

the Louisiana Legislature on July 6, 1989 while this case was on appeal. LIGA argues in their brief in opposition to Sealift's Motion objecting to the magistrate judge's Report and Recommendation that ·the Louisiana Legislature intended to alter the result of *Deshotels,* which interpreted La.Rev.Stat. § 22:1377 to refer to the type or kind of policy rather than the types or kinds of claims or risks. (Resp't Brief, Doc. No. 137 at 7–8). LIGA argues that the amendment now refers to the type or kind of risk or claim, not the form of the policy under which the claim arose and that the 1989 amendment should be given retroactive application. *Id.* at 8. LIGA states that as the policy in question was a WC/EL insurance policy with a marine endorsement, the amendments preclude coverage under LIGA. *Id.* If LIGA's arguments are upheld, then Sealifts' claims for attorneys' fees must be dismissed and the magistrate judge's decision should be affirmed.

The magistrate judge held that as Blair's claims would not be covered by LIGA under the 1989 amendment, any attorneys' fees incurred by Sealift in regard to that policy would also be excluded from LIGA coverage. (Mag.Report and Recommendation, Doc. No. 129 at 3). The magistrate judge followed *H & B Const. Co. of La. v. Louisiana Ins. Guar. Ass'n,* 580 So.2d 931 (La.Ct.App. 4th Cir.), *writ denied,* 587 So.2d 695 (La.1991), holding that the amending legislation should be given retroactive effect. Sealift filed an objection to the magistrate judge's Report and Recommendation on April 2, 1992, and that objection is currently before this Court for review.

The issue before this Court is whether Sealift's WC/EL insurance policy is "ocean marine insurance" within the LIGA definition. If the policy qualifies as "ocean marine insurance," then it is excluded from coverage by LIGA under La.Rev.Stat. § 22:1377 *and no* attorneys' fees would be due. If, however, the policy is not excluded from coverage by LIGA, then the attorneys' fees incurred by Sealift may be recoverable from LIGA.

## II. STANDARD OF REVIEW

This Court must first determine the appropriate standard of review for a district court to utilize in reviewing a magistrate judge's report and recommendation regarding the imposition of attorneys' fees *post-trial.* This Court looked first to the Fifth Circuit for the applicable rule; after ascertaining that the Fifth Circuit has not ruled directly on the issue,[6] this Court turned to the other circuits for guidance in determining the appropriate standard of review.

Federal Rules of Civil Procedure 72(a) and 72(b) provide for the review of magistrate judge Orders and Recommendations (Order). Rule 72(a)[7] provides for the clearly erroneous standard of review for magistrate judge Orders concerning non-dispositive matters. Rule 72(b)[8] provides for *de novo* review of

---

**6.** The Fifth Circuit recently faced the issue of the proper standard of review in attorneys' fees situations in *Randall v. Chevron U.S.A., Inc.,* 13 F.3d 888 (5th Cir.1994). The court declined to rule on the proper standard as a result of the failure of the plaintiffs to properly brief the issue. *Id.* at 910–911.

**7.** Rule 72(a) governs nondispositive matters, and reads as follows:

A magistrate judge to whom a pretrial matter not dispositive of a claim or defense of a party is referred to hear and determine shall promptly conduct such proceedings as are required and when appropriate enter into the record a written order setting forth the disposition of the matter. Within 10 days after being served with a copy of the magistrate judge's order, a party may serve and file objections to the order; a party may not thereafter assign as error a defect in the magistrate judge's order to which an objection was not timely made. The

district judge to whom the case is assigned shall consider such objections and shall modify or set aside any portion of the magistrate judge's order found to be clearly erroneous or contrary to law.

Fed.R.Civ.P. 72(a).

**8.** Rule 72(b) reads as follows:

A magistrate judge assigned without consent of the parties to hear a pretrial matter dispositive of a claim or defense of a party ... shall promptly conduct such proceedings as required. The magistrate judge shall enter into the record a recommendation for the disposition of the matter, including proposed findings of fact when appropriate. Within 10 days after being served with a copy of the recommended disposition, a party may serve and file specific, written objections to the proposed findings and recommendations ... The district judge to whom the case is assigned shall make a de

magistrate judge Orders which concern dispositive matters.. To determine whether an issue is dispositive or non-dispositive, and thus what the correct standard of review is, this Court must first ascertain how the issue would be characterized under the Federal Magistrates Act, 28 U.S.C. § 631 *et seq.* *Church of Scientology Western United States v. United States,* 1992 WL 456742, *1, 1992 U.S.Dist. LEXIS 18606, *2 (S.D.Cal.1992) (Church).

■ When acting on a pre-trial matter under 28 U.S.C. § 636(b)(1)(A),[9] the magistrate judge is permitted to hear and determine any pre-trial matter non-dispositive of a claim or defense pending before the court, except for eight specifically listed motions. 12 Wright & Miller, Federal Practice and Procedure: Civil § 3076.5 (Supp.1993). These eight motions excepted by subparagraph (A) are then reviewed under subparagraph (B). *Id.* The standard of review under subparagraph (A) is whether it has been shown that the magistrate judge's Order is clearly erroneous or contrary to law. Under the clearly erroneous standard of review, the review by the district court is circumscribed: the district court is bound by the clearly erroneous rule in reviewing questions of fact.

*Haines v. Liggett Group Inc.,* 975 F.2d 81, 91 (3d Cir.1992).

■ A finding is clearly erroneous when "although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *Hae Woo Youn v. Maritime Overseas Corp.,* 605 So.2d 187, 196 (La.Ct.App. 5th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 2342, 124 L.Ed.2d 252 (1993), *writ granted,* 609 So.2d 239 (La.1992), *vacated in part on other grounds,* 623 So.2d 1257 (La.1993), *citing McAllister v. United States,* 348 U.S. 19, 75 S.Ct. 6, 99 L.Ed. 20 (1954). When conducting a review under subparagraph (A), the district court is not permitted to receive further evidence; it is bound by the clearly erroneous rule in reviewing questions of fact. *Haines,* 975 F.2d at 91.

■ Matters which are handled by a magistrate judge pursuant to section 636(b)(1)(B)[10] and 636(b)(1)(C),[11] however, are subject to *de novo* review and are considered "dispositive." Review under subparagraph (B) includes review of the eight dispositive matters excluded from a magistrate judge's power of review under subparagraph (A). After a hearing, the magistrate judge

---

novo determination upon the record, or after additional evidence, of any portion of the magistrate judge's disposition to which specific written objection has been made in accordance with this rule. The district judge may accept, reject, or modify the recommended decision, receive further evidence, or recommit the matter to the magistrate judge with instructions. Fed.R.Civ.P. 72(b).

**9.** 28 U.S.C. § 636(b)(1)(A) reads:

Notwithstanding any provision of law to the contrary—a judge may designate a magistrate to hear and determine any pretrial matter pending before the court, except a motion for injunctive relief, for judgment on the pleadings, for summary judgment, to dismiss or quash an indictment or information made by the defendant, to suppress evidence in a criminal case, to dismiss or to permit maintenance of a class action, to dismiss for failure to state a claim upon which relief can be granted, and to involuntarily dismiss an action. A judge of the court may reconsider any pretrial matter under this subparagraph (A) where it has been shown that the magistrate's order is clearly erroneous or contrary to law.

**10.** 28 U.S.C. § 636(b)(1)(B) reads:

Notwithstanding any provision of law to the contrary—a judge may also designate a magistrate to conduct hearings, including evidentiary hearings, and to submit to a judge of the court proposed findings of fact and recommendations for the disposition, by a judge of the court, of any motion excepted in subparagraph (A).

**11.** 28 U.S.C. § 636(b)(1)(C) reads:

The magistrate shall file his proposed findings and recommendations under subparagraph (B) with the court and a copy shall forthwith be mailed to all parties. Within ten days after being served with a copy, any party may serve and file written objections to such proposed findings and recommendations as provided by rules of court. A judge of the court shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made. A judge of the court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate. The judge may also receive further evidence or recommit the matter to the magistrate with instructions.

acting under § 636(b)(1)(B) must submit to the district court proposed findings of fact and recommendations for disposition. After these findings have been served on the parties, and if properly objected to, the "judge of the court shall make a de novo determination." 28 U.S.C. § 636(b)(1)(C).

The eight exceptions in subparagraph (A) have not been interpreted to be exclusive, but rather the courts have examined the nature of the matter referred to the magistrate judge and have attempted to preserve the dichotomy between dispositive and non-dispositive matters. 12 Wright & Miller, Federal Practice and Procedure: Civil § 3076.5 (Supp.1993). Under § 636(b)(1)(B) and (C), the district court is permitted to make a *de novo* determination of the magistrate judge's proposed findings and recommendations and may also receive further evidence. *Haines,* 975 F.2d at 91. *See also* Fed.R.Civ.P. 72(b). The district judge also has the option of recommitting the matter to the magistrate judge with instructions. 28 U.S.C. § 636(b)(1)(C).

The question of attorneys' fees is not one of the eight listed exceptions in 28 U.S.C. § 636(b)(1)(C) to clearly erroneous review. The court must therefore determine whether the matter is in nature similarly dispositive to the eight listed matters. *Church,* 1992 WL 456742, at *1, 1992 U.S.Dist. LEXIS 18606, at *3. If the matter affects the final outcome of the litigation, then the matter is dispositive. *Id.*

In *West v. Redman,* 530 F.Supp. 546 (D.Del.1982), the court concluded that an award of attorneys' fees is integral to the merits of an action and is "clearly part of the overall relief sought and granted." *Id.* at 548, *citing Croker v. Boeing,* 662 F.2d 975, 983 (3d Cir.1981) (*en banc*). As such, the district court found that the award of attorneys' fees was dispositive in nature and was therefore reviewable under § 636(b)(1)(B). *Id.*

Various courts have struggled with whether magistrate judge awards of attorneys' fees should be classified as dispositive or non-dispositive, with no clear consensus as to the proper classification. The Court will analyze some of these cases to determine which standard of review should be relied on for a post-trial award of attorneys' fees.

In *Merritt v. International Brotherhood of Boilermakers,* 649 F.2d 1013, 1016–18 (5th Cir.1981), the Fifth Circuit addressed the standard of review to be applied to a magistrate judge's post-judgment award of discovery expenses and attorneys' fees under Rule 37. The court found that since discovery issues are pre-trial matters, they are non-dispositive matters and the magistrate judge is governed by 28 U.S.C. § 636(b)(1)(A). *Id.* at 1018. The *Merritt* court based its decision on the fact that the Rule 37 sanctions imposed were for discovery expenses, which are by definition a pre-trial matter. *Id.* However, the court said that even if the sanctions were *not* a pre-trial matter, due to the entry of a final judgment, it was still proper for the magistrate judge to determine the discovery expenses and attorneys' fees under 28 U.S.C. § 636(b)(3). *Id.*

Section 636(b)(3) states that "[a] magistrate may be assigned such additional duties as are not inconsistent with the Constitution and laws of the United States." 28 U.S.C. § 636(b)(3). The Fifth Circuit in *McLeod, Alexander, Powell & Apffel, P.C. v. Quarles,* 925 F.2d 853 (5th Cir.1991), held that § 636(b)(3) authorizes a district court to refer to a magistrate judge a Rule 60(b) motion, "at least for the limited purpose of holding an evidentiary hearing and preparing for the district court proposed findings of fact and recommendations for the disposition of the motion." *Id.* at 856. The court emphasized in footnote 5 that:

> [I]ts approval of referring a Rule 60(b) motion to a magistrate under § 636(b)(3) is expressly conditioned on the safeguards which attend references of other matters to magistrates under § 636(b)(1)(B). That is, the magistrate is not authorized to enter a judgment for the court; she makes only proposed findings of fact and recommends a ruling on the motion; her findings and recommendations are subject to *de novo* review by the district court.

*Id.* at 856, n. 5. Thus, matters referred to a magistrate judge under § 636(b)(3), as well as matters referred under § 636(b)(1)(B), are

subject to *de novo* review by the district judge.

The Fifth Circuit in *Perales v. Casillas,* 950 F.2d 1066 (5th Cir.1992), discussed the standard of review of an appeal of a magistrate judge's order awarding attorneys' fees under the Equal Access to Justice Act. The district court in *Perales* had referred the application for attorneys' fees to the magistrate judge pursuant to 28 U.S.C. § 636(b)(1). *Id.* at 1068. After the magistrate judge awarded the plaintiffs attorneys' fees, the defendants appealed to the district court. The district court was initially confronted with the issue of which section of the Federal Magistrates Act, 28 U.S.C. § 631 *et seq.,* the magistrate judge had proceeded under. *Id.* at 1070. The district court discussed section 636(b)(1)(A), under which non-dispositive pre-trial matter appeals are reviewed by a district court, and section 636(b)(1)(B), under which dispositive matter appeals are reviewed. *Id.*

The court noted that section 636 is silent on which standard should be applied to magistrate rulings on requests for attorneys' fees. *Id.* The district court noted that there was a split among the various courts which have considered the issue, but the district court then applied the clearly erroneous standard. *Perales,* 950 F.2d at 1070. The district court then concluded that the magistrate judge's order should be affirmed in all respects, even under the more rigorous *de novo* standard of review. *Id.* The Fifth Circuit stated that as the district court considered and rejected the defendant's objections under a *de novo* review, there was no prejudice to the plaintiffs. *Id.* at 1071. The district court in *Perales* applied both standards of review and as a result the decision is not determinative of the standard of review of the magistrate judge's order in this action.

In *Estate of Marilyn Marie Conners v. O'Connor,* 6 F.3d 656, 659 (9th Cir.1993), *cert. denied,* — U.S. —, 114 S.Ct. 693, 126 L.Ed.2d 660 (1994), the Ninth Circuit held that the magistrate judge was not authorized under § 636(b)(1)(A) to enter a final order on the plaintiffs' motion for attorneys' fees, as the motion did not involve a pre-trial matter. In *Conners,* the plaintiffs had moved for

attorneys' fees following a jury verdict in their favor under 42 U.S.C. § 1983. The district court then referred the matter to a magistrate judge. *Id.* at 657. The order referring the matter to the magistrate judge, however, did not specify under which subparagraph of section 28 U.S.C. § 636 the reference was made. *Id.* The magistrate judge ruled that a motion for attorneys' fees and costs is not dispositive of a claim or defense, and is not a motion which may be referred to a magistrate judge solely for a report and recommendation. *Id.* As a result of that ruling, the magistrate judge entered an order awarding attorneys' fees and costs to the plaintiffs, stating that the motion is subject to reconsideration by a district judge only if the order is clearly erroneous. *Id.*

The defendants then filed a motion for reconsideration of the order with the district court. The district court believed that the standard of review should be clearly erroneous, but to avoid delaying appellate review of the fee award, the district judge agreed to review *de novo* the magistrate judge's order. *Conners,* 6 F.3d at 658. The district court, after conducting the *de novo* review, reduced the award of attorneys' fees which the magistrate had granted to the plaintiffs. *Id.* at 658. The parties then cross-appealed to the Ninth Circuit.

The Ninth Circuit stated that the magistrate judge could issue such an order only if she was acting under § 636(b)(1)(A), but that the magistrate judge lacked authority under that section in this instance as the motion was neither pre-trial nor non-dispositive. *Id.* at 658–659. The court stated that § 636(b)(1)(A) does not authorize a magistrate judge to enter a post-judgment order. *Id.* at 659. The court held that as the plaintiffs sought a determination of their claim for attorneys' fees, their motion is *dispositive* of a claim of a party and excluded from the reach of section 636(b)(1)(A). *Id.* The court concluded, however, that as the district court conducted a *de novo* review, the error of the magistrate judge was cured and the district court's award of attorneys' fees was affirmed. *Conners,* 6 F.3d at 659.

The Tenth Circuit specifically addressed the nature of an award of post-trial attor-

neys' fees in *Insurance Co. of North America v. Timothy P. Bath, et al.,* No. 90–8083, 1992 WL 113746, 1992 U.S.App. LEXIS 13504 (10th Cir. May 27, 1992). The court held: "A motion for attorneys' fees, even if post-judgment, should be considered a dispositive motion triggering the procedure and standard of review found at 28 U.S.C. § 636(b)(1)." *Id.* at *2, 1992 U.S.App. LEXIS 13504 at *2. In *Bath,* the appellate court confronted the issue of whether a party could appeal a district court's ruling regarding a post-trial award of attorneys' fees if he had not objected to the magistrate judge's findings and recommendations on that issue within the 10 day period required under 28 U.S.C. § 636(b)(1). *Id.* Concluding that attorneys' fees are a dispositive issue, the court held that the party must object to the magistrate judge's findings and recommendations within ten days. *Id.*

The Court of Appeals for the Sixth Circuit in *Massey v. City of Ferndale,* 7 F.3d 506 (6th Cir.1993), also discussed the standard of review for a magistrate judge's decision on a motion for attorneys' fees and costs. Defendants had moved for sanctions, attorneys' fees and costs and the matter was referred to a magistrate judge under § 636(b)(1)(A). The magistrate judge then issued an order granting defendant's motion for attorneys' fees and costs under Rule 41 of the Federal Rules of Civil Procedure. *Id.* at 508. The plaintiffs filed a motion with the district court for reconsideration and/or objection to the magistrate judge's order. *Id.* The district court held that "[A] motion for attorneys' fees and costs is deemed to be a 'non-case dispositive,' factual matter and, as such, the standard to be applied in this Court's review of the Magistrate Judge's ... Order is whether the ruling was 'clearly erroneous.'" *Id.* As a result of utilizing the clearly erroneous standard, the district court affirmed the magistrate judge's order. *Id.*

The Sixth Circuit disagreed with the district court and concluded that "motions for sanctions, fees and costs are *not* to be *determined* by a magistrate judge." *Massey,* 7 F.3d at 509–510. By using the word "determined," the court indicated that the magistrate judge did not have the authority to issue an order, but could only issue a report

and recommendation for *de novo* review and a *determination* by the district court. *Id.* at 510. The court stated that the magistrate judge did not have the authority to rule upon post-dismissal motions for sanctions, fees and costs. *Id.*

In *Massey,* the motion came after the dismissal of the underlying action and as a result the court found that the motion was not a pre-trial matter pending before the court. *Id.* at 510. The court cited *Bennett v. General Caster Serv. of N. Gordon Co.,* 976 F.2d 995, 998 (6th Cir.1992), and stated that although the Rule 11 sanctions in *Bennett* were based on pre-trial actions by the plaintiff, the motion itself was not made until after the judgment on the underlying claim was issued. *Id.* The *Massey* court also stated that resolution of such motions are dispositive of a claim and are subject to *de novo* review by the district court under section 72(b). *Massey,* 7 F.3d at 510. The court concluded that the district court applied the incorrect standard of review and the court remanded the case to the district court to conduct a *de novo* review. *Id.*

The attorneys' fees sought by Sealift in the present action are similar to those sought by the defendants in *Massey.* Sealift is seeking reimbursement for fees incurred as a result of LIGA's initial denial of coverage of Dwayne Blair's claims, and of fees incurred in prosecuting this action against LIGA. The action by LIGA which resulted in the fees, the denial of coverage of Mr. Blair's claim, was pre-trial. But as the matter of coverage of Mr. Blair's claim has been settled by Sealift, and Sealift has been reimbursed by LIGA for plaintiff's claim, this action is for a post-trial award of attorneys' fees similar to the action in *Massey.*

The Fifth Circuit has ruled that the imposition of discovery sanctions, including attorneys' fees, is a non-dispositive matter which may be decided by a magistrate judge and reviewed by a district court under a "clearly erroneous" standard of review, as set forth in 28 U.S.C. § 636(b)(1)(A) and Fed.R.Civ.P. 72(a). *Merritt,* 649 F.2d at 1018. The Tenth Circuit, the Ninth Circuit and the Sixth Circuit have held that the imposition of attorneys' fees *post-trial* is a dispositive matter

which must be reviewed *de novo* by a district court judge. *Bath*, 1992 WL 113746 at *1, 1992 U.S.App. LEXIS 13504 at *2; *Conners*, 6 F.3d at 659; *Massey*, 7 F.3d at 510. The decision of the Fifth Circuit that the imposition of attorneys' fees *pre-trial* as sanctions is a non-dispositive matter does not govern our decision in this case. This case concerns the imposition of attorneys' fees *post-trial*, and, in the absence of Fifth Circuit case law on this issue, this Court is guided by the Tenth Circuit's decision in *Bath*, the Ninth Circuit's decision in *Conners*, and the Sixth Circuit's decision in *Massey*. Accordingly, this Court holds that a *post-trial* motion for attorneys' fees which is not a discovery sanction is a dispositive matter; therefore, under 28 U.S.C. § 636(b)(1)(B), the magistrate judge's decision denying a post-trial award of attorneys' fees is subject to *de novo* review.

The Court will now conduct a *de novo* review of the Magistrate Judge's report and recommendation, and Sealift's objections thereto.

### III. LAW AND ANALYSIS

In *Deshotels*, the Fifth Circuit was confronted with the issue of whether WC/EL insurance with a marine endorsement is ocean marine insurance under LIGA. *Deshotels*, 845 F.2d 582. In *Deshotels v. SHRM Catering Services, Inc.*, 538 So.2d at 988 (La.1989), the Louisiana Supreme Court concluded that the term "ocean marine" insurance is synonymous with traditional marine insurance, which is property insurance on hulls, freights and cargoes. Such insurance is different from marine protection and indemnity insurance, as that term is defined in La.Rev.Stat. § 22:6(13)(e).[12] *Id.* at 992.

Louisiana's highest court held that La.Rev. Stat. § 22:1377 enumerated different kinds of insurance *policies*, rather than different *risks*. *Id.* at 993. The *Deshotels* court then held that "the exclusion for ocean marine did

not apply to employer's liability policies which incidentally cover risks associated with maritime activities." *Id.* The court then found that a claim brought under a WC/EL policy with a marine endorsement does not involve "ocean marine insurance" and is not excluded from coverage under La.Rev.Stat. Ann. § 22:1377. *Id.*

After the Louisiana Supreme Court's decision in *Deshotels*, the Louisiana Legislature in 1989 amended the IGAL to include, for the first time, a definition of ocean marine insurance.[13] The Louisiana Supreme Court again addressed the scope of the ocean marine exclusion under LIGA in *Backhus v. Transit Casualty Co.*, 549 So.2d 283 (La.1989). In *Backhus*, the Louisiana Supreme Court for the first time addressed the issue of LIGA coverage after the 1989 amendments to the IGAL. The court never specifically addressed the amendments, but determined that the policy in effect at the time of the injury was an employer's protection and indemnity policy (P & I), *not* a workers' compensation policy. *Id.* at 287. The court also concluded that P & I insurance is ocean marine insurance under LIGA. *Id.* at 289. The court further stated that if the workers' compensation policy had been in effect, then under the *Deshotels* rationale, LIGA must assume the liabilities of the insolvent insurer. *Id.* at 286.

The Fifth Circuit Court of Appeals then decided *Sifers*. The *Sifers* court applied analysis of the Louisiana Supreme Court in *Deshotels* and *Backhus*, relying heavily on *Backhus*, to hold that WC/EL policies are *not* "ocean marine insurance" as that term is used under LIGA. *Sifers*, 892 F.2d at 391–392. The *Sifers* court's holding that P & I insurance is not "ocean marine insurance" was based on the *Backhus* decision, not on the 1989 amendments to the IGAL. As a result of relying on *Backhus* and not considering the effect of the amendments on the insurance policy in question, the Fifth Circuit

---

**12.** La.Rev.Stat.Ann. § 22:6(13)(e) (West 1959) reads as follows:

"Marine protection and indemnity insurance," meaning insurance against, or against legal liability of the insured for, loss, damage, or expense incident to ownership, operation, chartering, maintenance, use, repair or con-

struction of any vessel, craft or instrumentality in use in ocean or inland waterways, including liability of the insured for personal injury, illness or death or for loss of or damage to the property of another person.

**13.** See footnote 5.

concluded that it was unnecessary to determine whether the 1989 amendments should be given retroactive effect or whether the amendments alter the *Deshotels* holding that marine insurance includes WC/EL insurance. *Id.* at 391. The Fifth Circuit also questioned whether the Louisiana Supreme Court would conclude that the recent legislation overruled *Deshotels*. *Id.* at 392.

The *Sifers* court also stated that a state court's answer to a certified question is generally the "law of the case" in any further federal court proceeding involving the parties to the case. *Id.* at 391. As the law of the case, the answer to the certified question by the *Deshotels* court is binding on the parties to the certified case and is the law of the circuit. As the law of the circuit, it is also binding upon the parties in the appeal who were not parties to the certified case. *Id.* at 391–392.

The Louisiana Supreme Court decided in *Deshotels* that WC/EL policies *did not* constitute "ocean marine insurance" as that term is used in the IGAL. *Deshotels*, 538 So.2d at 993. The Louisiana Supreme Court subsequently approved that decision in *Backhus*, decided after the 1989 amendments to the IGAL, while holding that protection and indemnity policies *did* constitute "ocean marine insurance." *Sifers*, 892 F.2d at 390–392.

*H & B Constr. Co. v. Louisiana Ins. Guar. Assn.*, 580 So.2d 931, 934 (La.App. 4th Cir.), *writ den.*, 587 So.2d 695 (La.1991), does not warrant a different result. At issue in *H & B Constr. Co.* was whether the 1989 amendments to the LIGA statute were retrospective in application. *Id.* at 932. The court concluded that the amendments were interpretive and should be given a retroactive effect. *Id.* at 933. In *H & B Constr. Co.*, however, the policy in question was a P & I policy, *not* a WC/EL policy. *Id.* at 934. As the *Backhus* court had previously held that P & I insurance is excluded from LIGA coverage, the statement of the *H & B Constr. Co.* court that the kind of coverage is the determining factor for deciding whether a policy is exempt from LIGA coverage as "ocean marine insurance"[14] is merely dicta, and not binding on this Court. The holding of the

court that the 1989 amendments are to be given retroactive application does not alter the *Deshotels* analysis that when a WC/EL insurance policy is in issue, it is the type of policy and not the type of risk that is determinative of LIGA's liability.

In *Grubbs v. Gulf International Marine, Inc.*, 975 F.2d 186 (5th Cir.1992), the Fifth Circuit Court of Appeals confronted the issue of whether marine P & I insurance falls within the ocean marine exclusion to the direct action statute. The plaintiff in *Grubbs* had been injured in 1986 while employed as an engineer on a tug and sued the insurer in a direct action under Louisiana law. *Id.* at 187. The district court granted the insurer's motion for summary judgment and the plaintiff appealed. The Fifth Circuit, relying on *Deshotels* and *Backhus*, originally concluded that under the direct action statute, the exclusion for "ocean marine insurance" included P & I insurance and as such P & I insurers were exempt from the direct action statute. *Id.* at 191. The Fifth Circuit Court of Appeals later withdrew its original opinion in *Grubbs* and certified the following question to the Louisiana Supreme Court: "Whether the Louisiana Direct Action Statute, LSA–R.S. 22:655 (West Supp.1992) permits an injured party to maintain a direct action against a marine protection and indemnity insurer." *Grubbs v. Gulf International Marine, Inc.*, 985 F.2d 762, 763 (5th Cir.1993) *(per curiam), withdrawing,* 975 F.2d 186 (5th Cir.1992). The Louisiana Supreme Court granted the certification on April 23, 1993. *Grubbs v. Gulf International Marine, Inc.*, 616 So.2d 691 (La.1993).

In a minute entry dated September 9, 1993, this Court stated that it would defer ruling on the motion in the present case objecting to the magistrate judge's report and recommendation pending the resolution of the question that the Fifth Circuit had certified to the Louisiana Supreme Court in *Grubbs*.

On October 18, 1993, the Louisiana Supreme Court issued a ruling in *Grubbs v. Gulf International Marine, Inc.*, 625 So.2d 495 (La.1993). The Louisiana Supreme

14. *H & B Constr. Co.*, 580 So.2d at 934.

Court answered the certified question in the affirmative, holding that the Louisiana direct action statute, La.Rev.Stat. § 22:655, permits an injured party to maintain a direct action against a marine protection and indemnity insurer. *Id.* at 504.

On February 7, 1994, the Fifth Circuit issued its opinion in *Grubbs v. Gulf International Marine, Inc.,* 13 F.3d 168 (5th Cir. 1994), after the Louisiana Supreme Court's answer to the certified question. The court remanded the case to the district court for determination of the issue of constructive delivery in Louisiana of the protection and indemnity policy in question. *Id.* at 172. The court stated that as the Louisiana direct action statute applies to P & I insurers, the case must be remanded to determine whether the facts indicate that Grubbs may maintain the direct action against the insurer. *Id.*

The *Grubbs* decision only applies to coverage under the Louisiana direct action statute and does *not* affect the extent of coverage allowed under LIGA. The Louisiana Supreme Court in *Grubbs* stated that the similarity between LIGA and the direct action statute stretches no farther than the interpretation of the term "ocean marine insurance," as that term is used in the Louisiana Insurance Code. *Grubbs,* 625 So.2d at 500. As the LIGA statute and the direct action statute are not identical, and Sealift's action for attorneys' fees was brought under LIGA and *not* the direct action statute, the *Grubbs* decisions are not binding in this action.

The Louisiana Supreme Court's decisions in *Deshotels* and *Backhus,* and the Fifth Circuit's decision in *Sifers* are controlling on the pending issue of whether Sealift's "Standard Workmen's Compensation and Employer's Liability" insurance policy, which had a marine endorsement and was issued by Transit Casualty Company, was "ocean marine insurance" such that it would be excluded from coverage by LIGA. The *Deshotels* court held that WC/EL insurance is *not* "ocean marine insurance." 538 So.2d at 993. The *Backhus* court approved that holding *after* the legislature had amended the Louisiana Insurance Code to define "ocean marine insurance." *Backhus,* 549 So.2d at 286. The *Sifers* court followed and applied the *Des-*

*hotels* decision as the rule of the case. *Sifers,* 892 F.2d at 392.

In *Black v. Rebstock Drilling Company, Inc.,* 837 F.Supp. 200, 204 (W.D.La.1993), decided on November 17, 1993, Judge Scott concluded that the 1989 amendments to the Louisiana Insurance Guaranty Act do not alter the prior interpretation of the ocean marine exclusion. In that case, defendant, Rebstock Drilling Company Inc. (Rebstock), was insured under a standard WC/EL policy with a maritime endorsement issued by Western Preferred Casualty Company (Western), and reinsured by Early American Insurance Company (EAIC) through a cut-through endorsement. *Id.* at 202. Western was not authorized to transact insurance business in Louisiana, but transacted business as a surplus lines insurer. *Id.* EAIC was, however, authorized to transact insurance business in Louisiana and became liable for any losses Western failed to pay under its policy. *Id.* Plaintiff, Larry Black, was a member of the crew of the inland barge REBSTOCK 4 when he injured his back. The plaintiff sued Rebstock and shortly thereafter, Rebstock filed for Chapter 11 bankruptcy protection. Western and EAIC were also declared insolvent and placed in liquidation. *Id.* Plaintiff then joined LIGA as an additional defendant seeking relief against Rebstock's insolvent insurers. *Id.* The plaintiff contended that LIGA covered the policy as it was not "ocean marine insurance" under the 1989 amendments and that even if it was, the amendments are substantive and cannot be applied retroactively. *Black,* 837 F.Supp. at 202. Plaintiff's final argument was that the cut-through endorsement by EAIC is an "insurance policy" under the Guaranty Act. *Id.*

The *Black* court interpreted the prior decisions and stated that the *Sifers* court and the *Backhus* court both based their decisions on the belief that the 1989 amendments *did not* alter the ocean marine exclusion as it applies to WC/EL policies with maritime endorsements. *Id.* at 204. As a result of this conclusion, the court deemed it unnecessary to reach the issue of retroactivity of the 1989 amendments. *Id.* The court relied on *Deshotels* in holding that the WC/EL policy does

not fall within the "ocean marine" exclusion of La.Rev.Stat.Ann. § 22:1377 and is not excluded from the Louisiana Insurance Guaranty Act on that basis. *Id.*[15]

A recent case which reached the opposite conclusion from *Black* is *Fallen v. Elmwood Fleet, Inc.*, 1993 WL 515758, 1993 U.S. Dist. LEXIS 17458 (E.D.La.1993). Judge Clement relied on *H & B Const. Co.* and held that the 1989 amendments have retroactive application. *Id.* 1993 WL 515758, at *1, 1993 U.S.Dist. LEXIS 17458, at *1. Judge Clement found that the WC/EL policy with a marine endorsement issued by Rockwood Insurance Co. was excluded from LIGA coverage by the amendments and that LIGA was entitled to judgment on the issue as a matter of law. *Id.*

■ While neither *Black* nor *Fallen* are binding upon this court, we believe that the reasoning of *Black* best interprets the amendments to LIGA. This Court finds that the 1989 amendments to LIGA do not alter the *Deshotels* holding that WC/EL policies with marine endorsements are *not* excluded from LIGA coverage by the "ocean marine insurance" exclusion.

■ The magistrate judge relied on *H & B Constr. Co.* in his decision in denying Sealift's claim for attorneys' fees. The *H & B Constr. Co.* court's decision does not control this Court, as the insurance in question here is *WC/EL insurance, not P & I insurance.* Since *H & B Constr. Co.* did not involve the issue of whether WC/EL insurance is "ocean marine insurance," the magistrate judge should not have relied on that decision. Under the controlling case law, WC/EL insurance is *not* ocean marine insurance. Under *Deshotels* and *Sifers,* LIGA must pay Sealift's pre-insolvency attorneys' fees arising from an obligation between Sealift and a law firm, and LIGA must pay attorneys' fees that Sealift incurred in prosecuting a claim against LIGA, if LIGA acted

arbitrarily, capriciously, or without probable cause. The magistrate judge is to make this factual determination.

Sections 636(b)(1)(B) & (C) permit a judge to recommit a matter to a magistrate judge with instructions if the magistrate judge's decision does not withstand the scrutiny of a *de novo* review. Accordingly, this Court is remanding the determination of attorneys' fees to the magistrate judge to calculate the amount of attorneys' fees, if any, which Sealift may recover.

Accordingly,

IT IS THE ORDER OF THE COURT that the motion of defendant and third-party plaintiff, Sealift, Inc., objecting to the magistrate judge's report and recommendation, be, and the same is hereby GRANTED.

IT IS THE FURTHER ORDER OF THE COURT that the case be, and the same is hereby RECOMMITTED to the magistrate judge to determine the amount of the attorneys' fees, if any, to be paid to Sealift.

---

**15.** In *Black,* the plaintiff ultimately lost. Under Louisiana law, surplus lines insurers are exempt from the requirement of membership in LIGA, thus policyholders of surplus lines insurers are not protected by LIGA. *Black,* 837 F.Supp. at 202, n. 1. As a result, LIGA would not be responsible as to Western's insurance policy. But as the policy was reinsured with EAIC on a

cut-through endorsement, plaintiff could still recover if the EAIC endorsement was considered a separate policy. The court held that LIGA was not liable for plaintiff's claim against plaintiff's employer's insolvent insurer as the definition of the term "insurance policy" specifically excludes cut-through endorsements. *Id.* at 205–206.